**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

DANIELA QUIROZ,
*on behalf of herself and others similarly situated*,

        Plaintiff,

             v.

BEAVERTON FOODS, INC.,

        Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

     Plaintiff DANIELA QUIROZ, individually and on behalf of all other persons similarly situated in New York and the United States, by her undersigned attorneys, pursuant to this Class Action Complaint against the Defendant BEAVERTON FOODS, INC., alleges the following:

<u>**NATURE OF THE ACTION**</u>

     1.     Plaintiff DANIELA QUIROZ (herein Plaintiff or "Plaintiff QUIROZ"), brings this class action against Defendant, BEAVERTON FOODS, INC. (herein "Defendant" or "Beaverton"), for the deceptive practice of marketing its 10 oz. Inglehoffer® Original Stone Ground Mustard Sauce (herein the "Product"). Defendant deceptively markets the Product as having "No Preservatives", when it actually contains the preservative citric acid. The false misrepresentations are made both on the Product's packaging and online:







2.      By marketing the Product as having "No Preservatives", Defendant wrongfully capitalizes on and reaps enormous profits from consumers' strong preference for food products made free of preservatives.

3.      Plaintiff QUIROZ brings this proposed consumer class action on behalf of herself and all other persons nationwide who, from the applicable limitations period up to and including the present ("Class Period"), purchased Defendant's Product for consumption.

4.      Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

3

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, ConnStat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq,;*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1*, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1*, et seq.;*
33) New York Deceptive Acts and Practices Act,Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

4

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.ILaws § 6-13.1-1, *et seq.;*
*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

5.     Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiff seeks the relief set forth herein.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

7.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

8.     Furthermore, this court has personal jurisdiction over Defendant because its' Product is advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible

under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendant has caused harm to class members residing in this District.

## PARTIES

*Plaintiff*

10.      Plaintiff QUIROZ is, and at all times relevant hereto has been, a citizen of the State of New York, and resides in Kings County. During the Class Period, Plaintiff QUIROZ purchased the 10 oz. Inglehoffer® Stone Ground Mustard Product for personal consumption. Plaintiff QUIROZ purchased the Product at a Target in Elmhurst Queens for the premium price of $2.51. Plaintiff QUIROZ made this purchase in reliance on the representation on the package. As a result of Defendant's deceptive conduct, Plaintiff QUIROZ was injured when she paid money for a mustard that did not deliver the qualities it promised, and misled her as to its' contents. She would not have purchased the Product had she known the truth. Further, should Plaintiff QUIROZ encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

*Defendant*

11.      Defendant Beaverton is a corporation organized under the laws of Oregon with its headquarters and address for service of process at 7100 NW Century BLVD, Hillsboro Oregon, 97124.

12.      Defendant develops, markets, and sells food products under the "Inglehoffer®" brand name throughout the United States. The advertising for the Product, relied upon by Plaintiff

6

and the class, is prepared and/or approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Product is designed to encourage consumers to purchase the Product and reasonably misleads the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Product. Defendant owns, manufactures, distributes, creates, and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Product.

## FACTUAL ALLEGATIONS

### Defendant Markets Their Product As Free of Preservatives Even Though It Contains The Preservative Citric Acid

13.     The front labels of the Products represent that the product has "No preservatives when it actually contains the preservative citric acid.

14.     Citric acid is a preservative as the term is defined by the FDA in 21 C.F.R. § 101.22(a)(5):  "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

15.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The scientific evidence and FDA statements cited below establish that citric acid tends to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for

_____

[1] http://www.macmillandictionary.com/us/dictionary/american/tend (last accessed 07/05/2017)[2] http://www.fbcindustries.com/Citric_Acid.aspx (last accessed 07/05/2017)

which this substance is added to the Product. Citric acid does not fall into any of the regulatory

exemptions from the definition of a preservative.

16.     The FDA expressly classifies citric acid as a preservative in its <u>Overview of Food</u>

<u>Ingredients, Additives, and Colors</u>, on the FDA website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **<u>citric acid</u>**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.
(last accessed 07/05/2017)

17.     The FDA's classification of citric acid as a preservative is further confirmed by

its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand "Pineapple

Bites with Coconut" and "Pineapple Bites":

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further
> misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in
> that they contain the chemical preservative ascorbic acid and citric acid but their
> labels fail to declare these preservatives with a description of their functions. 21
> CFR 101.22." *See* **EXHIBIT A**, FDA Warning Letter dated October 6, 2010
> (emphasis added).

18.     Citric acid's status as a preservative is also acknowledged by insiders in the

preservative manufacturing and distribution industries. FBC Industries, Inc., a manufacturer and

8

supplier of FCC grade citric acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function:  "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

**Plaintiff's Claims Are Not Preempted By The FDCA**

19.     Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

**Defendant's Misrepresentations Are Material To A Reasonable Consumer And Relied Upon By Plaintiff And The Class**

20.     Plaintiff and Class members reasonably relied on Defendant's representations that the Product is free of preservatives.

21.     Defendant's "No Preservatives" misrepresentation would deceive a reasonable consumer.

22.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Product is misbranded as set forth herein, and would not have bought the Product

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx (last accessed 07/05/2017)

had they known the truth about it. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). A representation that a product has "No Preservatives" is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Product has "No Preservatives" because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research below).

**Defendant Has An Intent To Mislead**

23.     Defendant would not have included the representation on the front label of the Product if it was not going to influence consumer behavior.

24.     By representing that the Product has "No Preservatives", Defendant seeks to capitalize on consumers' preference for less processed foods with fewer additives and the association between such products and a wholesome way of life. Consumers are willing to pay more for less processed products with no additives because of this association, as well as the perceived higher quality, health, and safety benefits associated with products labeled as being free of preservatives.

25.     The marketing research firm Mintel reports that more and more Americans are concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that **84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods**. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[3]

26.     And alternet.org reports research showing that most Americans are prepared to pay a premium price for such healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[4]

27.     Given these trends, Defendant has a natural interest in misrepresenting its' Product as free of preservatives despite the presence of citric acid. The Product's misrepresentation provides a clear marketing advantage over competitors that do not engage in such deceptive conduct.

28.     Defendant's intent to mislead is proven by the labeling of its' very own 8 oz. Inglehoffer® Original Stone Ground Mustard in the glass jar (herein "comparison mustard"), shown below. The comparison mustard is the exact same mustard as the Product, with the exact same name and the exact same ingredients:

_____

[3]     http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed 07/05/2017)
[4] http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 07/05/2017)





29. Defendant's comparison mustard rightfully does not bare the "No Preservatives" misrepresentation given that it contains citric acid. The comparison mustard shows that Defendant knows how to properly label its other Product, and therefore intends to mislead consumers with the Product in order to boost sales.

30. Defendant knows that its' "No Preservatives" representation is false, and intends that they be relied upon by Plaintiff and the Class. Upon information and belief, Defendant employs food scientists who are familiar with the basic properties of citric acid.

**Plaintiff and the Class Were Injured As The Result Of Defendant's Deceptive Practices**

31.     Plaintiff and the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for a Product that was represented to them as preservative-free, and then received a Product that was preservative-laden, which has significantly less value. Plaintiff and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Product, or would only have been willing to pay less for it, had they known the truth. They were injured in an amount up to the purchase price, the difference between the actual value of the Product and the value of the Product as misrepresented to them by Defendant, to be determined by expert testimony at trial. Defendant's very inclusion of "No Preservatives" on the Product's front labels is an acknowledgment that this increases the Products' perceived value. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 FSupp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendants' "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendants' misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums, that

they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately

alleged injury under GBL § 349…")

## CLASS ACTION ALLEGATIONS

32.     Plaintiff  QUIROZ brings this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of the following class (the "Nationwide Class"):

> All persons or entities in the United States who made retail
> purchases of the Products in the United States during the applicable
> limitations period for personal consumption and not resale, and/or
> such subclasses as the Court may deem appropriate. (the
> "Nationwide Class")

In the alternative, Plaintiff QUIROZ seeks to represent a class consisting of the following subclass:

> All persons or entities in New York who made retail purchases of
> the Products in New York during the applicable limitations period
> for personal consumption and not resale, and/or such subclasses as
> the Court may deem appropriate. (the "New York Class")

33.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or

have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

34.     Plaintiff reserves the right to revise the Class definition based on facts learned in

the course of litigating this matter.

35.     This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are

thousands of Class members. The Classes are so numerous that individual joinder of all Class

members is impracticable.

15

36.    Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members. These include:

a.    whether labeling "No Preservatives" on Products containing citric acid is false and misleading;

b.    whether Defendant engages in a marketing practice intended to deceive consumers by labeling "No Preservatives" on a Product containing citric acid;

c.    whether Defendant deprived Plaintiff and the Classes of the benefit of their bargain because the Product purchased is different than what Defendant warranted;

d.    whether Defendant deprived Plaintiff and the Classes of the benefit of their bargain because the Product they purchased had less value than what was represented by Defendant;

e.    whether Defendant caused Plaintiff and the Classes to purchase a substance that was other than what was represented by Defendant;

f.    whether Defendant has been unjustly enriched at the expense of the Plaintiff and other Class members by its misconduct;

g.    whether Defendant must disgorge any and all profits they have made as a result of its misconduct; and

h.    whether Defendant should be barred from marketing the Product as having "No Preservatives."

37.    Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased Defendant's Products and sustained similar injuries arising out of

16

Defendant's conduct in violation of the law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes are caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members, and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

38.     Plaintiff will fairly and adequately represent and pursue the interests of the Classes. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

40.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

41.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

42.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

43.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

44.     Plaintiff QUIROZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

45.     Plaintiff QUIROZ brings this claim on behalf of herself and the other members of the Nationwide Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL§ 349").

46.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

47.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

48.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

49.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

50.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets that its Product contains "No Preservatives" are unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

51.     The foregoing deceptive acts and practices are directed at consumers.

52.      Defendant should be enjoined from marketing its products as containing "No Preservatives" as described above pursuant to NY GBL § 349.

53.     Plaintiff QUIROZ, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

54.     Plaintiff QUIROZ realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

55.    Plaintiff QUIROZ brings this claim individually and on behalf of the other members of the Nationwide Class for violations of NY GBL § 349.

56.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

57.     Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

58.    The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, the following reasons:

    a.    Defendant knowingly and falsely represents and advertises that the Product contains "No Preservatives" with an intent to cause Plaintiff and members of the Classes to believe that it does not contain  preservatives, when it actually contains citric acid;

    b.    Defendant caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

    c.    Defendant made material representations and statements of fact to Plaintiff and the Classes that resulted in Plaintiff and the Classes reasonably believing the represented or suggested state of affairs are what they actually were; and the practices employed by Defendant, whereby Defendant advertises, promotes, and

markets that its Product contains "No Preservatives" is unfair, deceptive, and misleading and are in violation of NY GBL § 349.

59.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

60.     Defendant's actions impact the public interest because Plaintiff and members of the Classes were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendant's generalized course of deception.

61.     The foregoing deceptive acts, and practices were directed at consumers.

62.     The foregoing deceptive acts, and practices caused Plaintiff and other Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product. Plaintiff and other Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

## (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

63.     Plaintiff QUIROZ realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

64.     Plaintiff QUIROZ brings this claim individually, as well as on behalf of members of the Nationwide class, for violations of NY GBL § 350.

65.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

66.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff QUIROZ brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 350.

67.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

68.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

69.     Defendant caused to be disseminated throughout New York, through advertising, marketing and other publications, statements that are untrue or misleading.

70.     Defendant's affirmative misrepresentation that the Product contain "No Preservatives" is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

71.     Defendant has violated NY. Gen. Bus. Law § 350 because its' "No Preservatives" misrepresentations were material and likely to deceive a reasonable consumer.

72.     59. Plaintiff QUIROZ and members of the Classes have suffered an injury as a result of Defendant's false and misleading advertising.

23

73.     Pursuant but not limited to N.Y. Gen. Bus. Law § 350-e, Plaintiff QUIROZ and members of the Class seek monetary damages (including actual damages, and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, any interest and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

74.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

75.     Defendant intentionally makes materially false and misleading representations regarding the composition of the Product.

76.     Plaintiff and members of the Classes reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Product contain a preservative, and they would not have purchased the Product had they known.

77.     Defendant intended that Plaintiff and the Classes rely on its misrepresentations.

78.     Plaintiff and members of the Classes have been injured as a result of Defendant's fraudulent conduct.

79.     Defendant is liable to Plaintiff and members of the Classes for damages sustained as a result of Defendant's fraud.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class and/or the New York Class in the alternative;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiff and the Classes;

e. Actual and/or statutory damages for injuries suffered by Plaintiff and the Classes and in the maximum amount permitted by applicable law;

f. An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all members of the Classes the amounts paid for the Product;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: December 18, 2017

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By:   /s/ C.K. Lee
        C.K. Lee, Esq.

26