**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DANIELA QUIROZ,

*on behalf of herself and others similarly situated,*

                                        Plaintiff,

                    v.

BEAVERTON FOODS, INC.,

                                        Defendant.

Case No.: 17-cv-07348-NGG-JO

**DEFENDANT BEAVERTON FOOD, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Dentons US LLP
Sandra D. Hauser
1221 Avenue of Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Michael J. Duvall (admitted *pro hac vice*)
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
michael.duvall@dentons.com

ATTORNEYS FOR DEFENDANT
BEAVERTON FOODS, INC.

Date of Service: June 28, 2018

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................4

ARGUMENT ...............................................................................................................................9

I.     PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE AMENDED
COMPLAINT LACKS FACTS TO SUPPORT ITS CONCLUSORY
STATEMENT THAT THE PRODUCT'S "NO PRESERVATIVE" LABEL IS
MISLEADING.................................................................................................................9

     A.     Plaintiff Alleges No Facts that Even Suggest, Let Alone Establish, that the
Citric Acid in the Product Actually Functions as a Preservative ..........................11

     B.     Plaintiff Alleges No Facts that Even Suggest, Let Alone Establish, that the
Citric Acid in the Product Is Both a Chemical and Was Added to the
Product ....................................................................................................................15

II.     PLAINTIFF FAILS TO ADEQUATELY ALLEGE INJURY CAUSED BY
BEAVERTON'S CONDUCT ........................................................................................16

III.     PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE BAR ON
CIRCUMVENTION ......................................................................................................18

IV.     PLAINTIFF'S COMMON LAW FRAUD CLAIM MUST BE DISMISSED
BECAUSE SHE FAILS TO SUFFICIENTLY ALLEGE FRAUDULENT
INTENT ........................................................................................................................21

V.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF............................23

CONCLUSION ..........................................................................................................................24

107678678\V-7

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alce v. Wise Foods, Inc.*,
  No. 17 CIV. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ........................ 14-15

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016).................................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................10, 18

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).........................................................................................................10

*Belcastro v. Burberry Ltd.*,
  No. 16-CV-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017) ............................ 16-17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 10, 14-15

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ...............................15

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005)..............................................................................................19

*Buonasera v. Honest Co.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ...............................................................................23

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016)................................................................................22

*Da Silva Moore v. Publicis Groupe*,
  868 F. Supp. 2d 137 (S.D.N.Y. 2012), *objections overruled*, 2012 WL
  12528637 (S.D.N.Y. Nov. 8, 2012) ...................................................................................10

*DaCorta v. AM Retail Grp., Inc.*,
  No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018)................................24

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
  27 F. Supp. 3d 357 (E.D.N.Y. 2014) .............................................................................21-22

*Davis v. Hain Celestial Grp., Inc*,
  297 F.Supp.3d 327 (E.D.N.Y. Apr. 3, 2018) ..................................................................22-24

ii

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ....................................................................8

*Hu v. Herr Foods, Inc.*,
    251 F. Supp. 3d 813 (E.D. Pa. 2017) .............................................................11, 14

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ...................... 9, 17-18

*Kommer v. Bayer Consumer Health*,
    710 F. App'x 43 (2d Cir. 2018) ..................................................... 23-24

*Oscar v. BMW of N. Am., LLC*,
    09 CIV. 11 (PAE), 2012 WL 2359964 (S.D.N.Y. June 19, 2012) .....................................9, 16

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997)............................................................ 20-21

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)...........................................................10

*Pungitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012) ......................................................23

*Ries v. Arizona Beverages USA LLC*,
    No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)..........................................15

*Rodriguez v. Cheesecake Factory Inc.*,
    No. 16-CV-2006 (JMA)(AKT), 2017 WL 6541439 (E.D.N.Y. Aug. 11, 2017) ................9, 23

*Santiago v. City of New York*,
    No. 15-CV-517 (NGG)(RER), 2016 WL 5395837 (E.D.N.Y. Sept. 27, 2016)......................10

*Servedio v. State Farm Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x 110 (2d Cir. 2013)............... 16-17

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................21

*Sigall v. Zipcar, Inc.*,
    582 F. App'x 18 (2d Cir. 2014) ......................................................19

*Simon v. Smith & Nephew, Inc.*,
    990 F. Supp. 2d 395 (S.D.N.Y. 2013)................................................12

*Solak v. Hain Celestial Grp., Inc.*,
    No. 3:17-CV-0704 (LEK)(DEP), 2018 WL 1870474 (N.D.N.Y. Apr. 17,
    2018) .......................................................................19

*Solent Freight Servs., Ltd. v. Alberty*,
   914 F. Supp. 2d 312 (E.D.N.Y. 2012) ................................................................10

*Treiber v. Aspen Dental Mgmt., Inc.*,
   635 F. App'x 1 (2d Cir. 2016) ...................................................................... 18-19

*Van Praagh v. Gratton*,
   993 F. Supp. 2d 293 (E.D.N.Y. 2014) ..................................................................8

*Verzani v. Costco Wholesale Corp.*,
   No. 09-CIV-2117 (CM), 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*
   432 F. App'x 29 (2d Cir. 2011) ...................................................................... 19-20

*Volpe v. Am. Language Commc'n Ctr., Inc.*,
   200 F. Supp. 3d 428 (S.D.N.Y. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017)........................8

*Wills v. Amerada Hess Corp.*,
   No. 98 CIV. 7126(RPP), 1999 WL 500142 (S.D.N.Y. July 15, 1999)...................................10

*In re Zyprexa Prods. Liab. Litig.*,
   No. 04-MDL-1596, 2007 WL 2332544 (E.D.N.Y. Aug. 15, 2007) ........................................19

**State Cases**

*Goshen v. Mut. Life Ins. Co. of New York*,
   98 N.Y.2d 314 (2002) .............................................................................. 9-10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*,
   85 N.Y.2d 20 (1995) ................................................................................16

*Rotterdam Ventures, Inc. v. Ernst & Young LLP*,
   300 A.D.2d 963 (3d Dep't 2002) ....................................................................21

*Schlessinger v. Valspar Corp.*,
   21 N.Y.3d 166 (2013) ...............................................................................19

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) .............................................................................16, 17

**Federal Statutes**

21 U.S.C.
   § 337................................................................................................4
   § 343...............................................................................................12

**Federal Rules and Regulations**

21 C.F.R.

    § 101.22 ................................................................................................................... *passim*

    § 101.100 ................................................................................................................ 2-3, 16

    §§ 182.3013 *et seq.* ...................................................................................................... 15

    § 184.1033(a) ............................................................................................................. 5, 15

Federal Rules of Civil Procedure

    Rule 8 ............................................................................................................................ 1, 3

    Rule 9(b) ................................................................................................................... *passim*

    Rule 12(b)(1) ...................................................................................................................... 1

    Rule 12(b)(6) ................................................................................................................. 1, 3

**State Statutes**

New York General Business Law

    § 349 ........................................................................................................................ *passim*

    § 350 ....................................................................................................................... 1, 3, 9

    § 350-d .................................................................................................................. 3, 4, 16

Defendant Beaverton Foods, Inc. ("Beaverton"), by its attorneys Dentons US LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Daniela Quiroz's Amended Complaint (the "Amended Complaint"), pursuant to Rules 8, 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff has filed an ambitious Amended Complaint against Beaverton, alleging that she was deceived and somehow injured in her purchase of a Beaverton product—specifically, a 10 oz. squeeze container of Inglehoffer® Original Stone Ground Mustard (the "Product"), for which she paid $2.51 at a Target store in Queens—because the Product label states "No Preservatives," while at the same time disclosing "citric acid" as a Product ingredient.[1]  Neither Plaintiff nor her purported expert make any allegations regarding the quantity or source of citric acid in the Product, nor do either include a single fact supporting the notion that citric acid actually functions in this specific Product as a preservative, as they must.  Plaintiff also expresses no qualms about having consumed trace amounts of citric acid.  Instead she simply speculates that Beaverton has made a misrepresentation in violation of New York's General Business Law ("GBL") Sections 349 and 350 and common law protections against fraud, claiming that citric acid is *per se* a preservative, and that she was injured in an amount up to the purchase price of the Product as a result of mislabeling.

---

[1] Plaintiff filed her initial Complaint on December 18, 2017. (D.E. 1).  By letter dated February 21, 2018, Beaverton sought leave to move to dismiss the Complaint on the basis that, among other things, Plaintiff failed to allege a plausible claim as she did not plead the quantity of citric acid in the Product and whether citric acid, in that quantity, actually has a preservative function in the Product.  (D.E. 12).  In response to Beaverton's letter, Plaintiff filed her Amended Complaint, which includes a declaration from Dr. Marc Meyers, a purported food science expert. (D.E. 21 ("Am. Compl."), Ex. B).  Notably, while Dr. Meyers provides general information regarding the properties of citric acid, Dr. Meyers did not test the Product or provide any factual allegations regarding the quantity of citric acid in the Product, and therefore failed to address the primary pleading deficiency identified in Beaverton's pre-motion letter.

1

Plaintiff's Amended Complaint fails for the most fundamental of reasons:

*First*, Plaintiff's Amended Complaint lacks facts, let alone plausible facts, to support her core allegation that the Product is "preservative-laden." Her claim is based entirely on the assertion that citric acid is categorically a "chemical preservative" as defined by United States Food and Drug Administration's ("FDA") regulations regarding food labeling. She claims that Beaverton thus was required to identify it as such. But the very regulatory definition upon which Plaintiff bases her claim belies this theory. The FDA definition is tied to ingredients that *actually function* in a product to "prevent or retard deterioration." 21 C.F.R. § 101.22(a)(5). The FDA, in enforcing its regulations regarding the labeling of preservatives, has also made clear that the mere presence of citric acid in a product does not mean that citric acid is acting as a preservative in that product. There are no facts whatsoever in the Amended Complaint that support a claim that citric acid functions in the Product as a preservative, nor facts that even indicate the quantity of citric acid it contains relative to other ingredients to add any modicum of plausibility to this case. In fact, the Eastern District of Pennsylvania rejected a very similar complaint against another food manufacturer for exactly this reason.

*Second*, FDA regulations—which are tied to ingredient functionality—require a product label to identify that the product contains a preservative only when a "chemical preservative" is added to the product, and Plaintiff fails even to allege that the citric acid in the Product here is chemical. This too is a critical omission, as citric acid often is naturally occurring (*e.g.*, it is present in lemons, oranges, garlic, etc.). The FDA regulations further, and importantly, *exempt* labeling as a preservative any "***[i]ncidental additives*** that are present in a food at insignificant levels and do not have any technical or functional effect in that food," including "[s]ubstances that have no technical or functional effect but are present in a food by reason of having been

incorporated into the food as an ingredient of another food."  *See* 21 C.F.R. § 101.100(a)(3) (emphasis added).  Plaintiff does not and cannot plead that the Product does not fall within this exemption.

Moreover, New York's General Business Law makes it a "complete defense that [an allegedly deceptive] act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by . . . any official . . . agency of the United States as such rules, regulations or statutes are interpreted by . . . federal courts."  GBL § 349(d); *accord id.* § 350-d. The bottom line:  The allegations of Plaintiff's Amended Complaint, including those based upon Dr. Meyers' declaration, are based solely on speculation regarding the quality, quantity, and function of the citric acid in the Product, not on well-pleaded facts.  The Amended Complaint thus fails to meet the basic pleading requirements of Rule 8(a) and, for fraud, Rule 9(b), and fails to state essential elements of either Plaintiff's statutory claims or her common law fraud claim as a matter of law, requiring dismissal under Rule 12(b)(6).

***Third***, Plaintiff's claims fail because her allegations do not support any cognizable injury. The Amended Complaint alleges the full purchase price of the Product as Plaintiff's injury and then states, in conclusory fashion, that Plaintiff paid a "price premium" for the Product, *i.e.*, without any facts supporting her assertion that the Product is sold by Beaverton at a premium price.  In fact, Plaintiff admits she had no direct dealing with Beaverton.  She does not reveal the amount of the alleged premium, let alone how it was calculated.  Her allegations are insufficient as a matter of well-recognized law.  Plaintiff thus fails to state this critical element of her claims under GBL §§ 349 and 350 and for common law fraud.

***Fourth***, Plaintiff's claims are barred by the "bar on circumvention."  This doctrine prohibits a claimant from using a state tort claim to seek recompense for the violation of a

federal statute that otherwise lacks a private right of action.  Here, as noted above, Plaintiff's

claims are not free-standing, but rather are based entirely on the FDA's definition of "chemical

preservative" and related labeling requirements.  As such, Plaintiff's claims seek to privately

enforce the provisions and implementing regulations of the Food, Drug, and Cosmetics Act (the

"FDCA"), a statute that does not contain a private right of action.  Enforcement of food labeling

standards is left to the body most competent to handle alleged FDCA violations—the FDA.  21

U.S.C. § 337(a); *see also* GBL §§ 349(d); 350-d.

In addition, Plaintiff's claim for common law fraud fails because Plaintiff does not allege

with particularity that Beaverton had fraudulent intent, as she must under Rule 9(b) of the

Federal Rules of Civil Procedure.  Plaintiff also lacks standing to seek injunctive relief because

she has not alleged, and cannot allege, a likelihood of future harm.

These and other shortcomings of Plaintiff's Amended Complaint are discussed more fully

below, requiring dismissal as a matter of law.

## STATEMENT OF FACTS[2]

Beaverton is a food manufacturer that develops, markets, and sells various food products

throughout the United States.  (Am. Compl. ¶¶ 10-11).  One of the food products sold by

Beaverton is its Inglehoffer® Original Stone Ground Mustard.  (*Id.* ¶ 1).  Beaverton produces its

Inglehoffer® Original Stone Ground Mustard in a variety of containers of different sizes

including, among others, a 10 oz. squeeze container—*i.e.*, the Product.  (*Id.* ¶ 1).  The Product's

label states that the Product contains "No Preservatives."  (*Id.* ¶ 1).

Plaintiff alleges that the Product's "No Preservative" claim is false and misleading

---

[2] Beaverton recites Plaintiff's allegations for purposes of evaluating the Amended Complaint but
does not admit their truth.  Indeed, if this case proceeds to discovery, Beaverton will establish
that Plaintiff's factual claims are without merit.

4

because the label states that the Product contains citric acid, which Plaintiff asserts is a

preservative.  (*Id.*).  Plaintiff does not claim that the "No Preservatives" label is misleading

because the Product also contains salt, vinegars, and sugar—all ingredients that are known

preservatives with anti-microbial properties if present in food in significant quantity.  *See* 21

C.F.R. § 101.22(a)(5).  That is because Plaintiff's claim rests upon the FDA's definition of

"chemical preservative," as set forth in 21 C.F.R. § 101.22(a)(5):

> The term *chemical preservative* means any chemical that, when added to food,
> tends to prevent or retard deterioration thereof, but does not include common salt,
> sugars, vinegars, spices, oils extracted from spices, substances added to food by
> direct exposure thereof to wood smoke, or chemicals applied for their insecticidal
> or herbicidal properties.

(Am. Compl. ¶ 13 (quoting 21 C.F.R. § 101.22(a)(5)) (emphasis in original)).[3]

Plaintiff makes no claim that the citric acid used in the Product is chemical rather than

naturally occurring.  The FDA regulations recognize that citric acid is "a naturally occurring

constituent of plant and animal tissues,"  21 C.F.R. § 184.1033(a), and only occasionally, a

synthetic additive.  Plaintiff purposefully ignores this and instead states that the FDA "expressly

classifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors,

on the FDA website," pointing out that citric acid is one of several "names found on product

labels" that indicates that a product contains a preservative.  (Am. Compl. ¶ 16).

Plaintiff also relies on two other items.  First, she cites a warning letter the FDA's San

Francisco field office sent to a different food manufacturer in 2010 in which the FDA informed

---

[3] There is good reason for Plaintiff to base her definition of "preservative" on the definition of
"chemical preservative" provided by the FDA's regulations.  If she did not use this definition,
and instead attempted to impose a definition that differed from the FDA's, her claims would be
preempted for imposing labeling requirements that differ from the FDA's requirements, which
she expressly acknowledges in her Amended Complaint.  (Am. Compl. ¶ 34 ("Plaintiff's claims
are not preempted by the FDCA because the definition of "preservative" as used herein is
identical with that of the FDA.")).

107678678\V-7

the food manufacturer that two of its products were misbranded under FDCA because "they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions," as required by FDA regulations. (*Id.* ¶ 17).[4]  And second, Plaintiff submits the declaration of Dr. Marc Meyers, a purported expert on food science, to substantiate her unsupported claims that citric acid has a preservative function in the Product.  In his declaration, Dr. Meyers claims that citric acid may function as "an antioxidant, sequestrant, and preservative, among many other properties," as well as an "acidity regulator, acidulant, and flavor enhancer." (*Id.*, Ex. B, ¶¶ 20-21).  He also claims, operating under the apparent and incorrect assumption that citric acid is added to the Product for taste, that a lower level of citric acid is needed to preserve a product than is needed for taste and, therefore, that the citric acid in the Product acts as a preservative. (*Id.*, Ex. B, ¶¶ 24-25, 35).[5]

The Amended Complaint, however, contains no allegations regarding the actual purpose of citric acid in the Product, nor the reason it is listed as an ingredient on the label.  In addition, neither Plaintiff nor Dr. Meyers (who did not test the Product) allege the amount of citric acid in the Product, let alone any supporting facts suggesting that it is present in sufficient amounts to

---

[4] Plaintiff cites this letter with no context as to how, when or why this FDA office concluded that the citric acid included in the referenced products of a different company functions as a chemical preservative.  In any event, this letter does not support the notion that any product containing citric acid must be labeled as having a chemical preservative, regardless of how the citric acid actually functions, whether it is even a chemical, and whether it is merely an "incidental" ingredient that is exempt from labeling altogether.

[5] Most notably, Dr. Meyers does not expressly opine that citric acid in any quantity—even in a negligible amount—acts as a preservative.  Rather, he merely states that less citric acid is needed for the ingredient to act as a preservative than to act as a flavor enhancer. (*Id.*, Ex. B, ¶ 25).  Indeed, while the declaration is not entirely clear, the final paragraph appears to state that citric acid does not necessarily have a preservative function in every type of food, as Dr. Meyers writes:  "There are several mechanisms by which citric acid preserves food and beverages, *some of which apply to **almost** any*. . . .  Even if a food is alkaline (i.e., has a pH above 7.0, which denotes very low acidity), citric acid *may* still act as a preservative . . . ." (*Id.*, Ex. B, ¶ 37 (emphasis added)).

6

have any preservative effect.  Instead, Plaintiff simply claims a "gotcha," based on the fact that citric acid is disclosed—even if in trace amounts, and present for reasons having nothing to do with preservation or flavor.  In fact, Plaintiff asserts that the purpose of the ingredient in the Product is not relevant at all.  (*Id.* ¶ 14).  All of these points—including specifically the omission of any facts or data supporting the claims—were raised in Beaverton's pre-motion letter and at the pre-motion conference before the Court.  Plaintiff has nonetheless amended her complaint without even addressing these points.

With respect to injury, Plaintiff alleges that she purchased the Product at a Target in Queens, New York "for the premium price of $2.51." (*Id.* ¶ 9).  Plaintiff claims that because the Product is "preservative-laden" it has "significantly less value" and that, therefore, Plaintiff was "injured in an amount up to the purchase price, the difference between the actual value of the Product and the value of the Product as misrepresented to them by Defendant." (*Id.* ¶ 41).  Plaintiff also claims that she "made [her] purchase in reliance on the label's representation that the Product contained 'No Preservatives,'" and that she "was injured when she paid money for a mustard that did not deliver the qualities it promised, and misled her as to its contents." (*Id.* ¶ 9).

In making these conclusory allegations, Plaintiff includes no comparative price or comparison product. While Plaintiff's omission of a comparison price is not a new development in this action, her omission of a comparison product is.  In the initial Complaint, Plaintiff identified a 4 oz. version of the Inglehoffer® Original Stone Ground Mustard at issue in this case as a "Comparison Product" because, unlike the 10 oz. Product, the 4 oz. Comparison Product did not contain a "No Preservatives" label.  (D.E. 1, ¶¶ 28-29).[6]  However, the Amended Complaint

---

[6] In the text of the initial Complaint, Plaintiff referred to an 8 oz. bottle as the "Comparison Product."  However, Plaintiff included two pictures of the "Comparison Product" taken from Beaverton's website and those pictures clearly identify a 4 oz. bottle.  Accordingly, Beaverton

7

omits reference to the 4 oz. Comparison Product.  (*See generally* Am. Compl.).  This is unsurprising, as a review of Beaverton's website shows that the Comparison Product's listed price completely contradicts Plaintiff's allegations of a price premium.  On Beaverton's website, the 10 oz. Product is listed at $3.99—or $0.399 per ounce.  Declaration of Sandra D. Hauser, dated June 28, 2018 ("Hauser Decl.")[7], Ex. A, at 4 (List of Inglehoffer®-brand Products from Beaverton's Website).  However, the 4 oz. Comparison Product, which does not include the "No Preservative" label, is listed at $1.80—or $0.45 per ounce, *i.e.*, at a higher price per unit than the Product.  *Id.*  As such, there is no price premium associated with the 10 oz. Product's "No Preservative" label.[8]

Finally, Plaintiff claims that she would not have purchased the Product had she known the truth and that if she were to "encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging."  (Am. Compl. ¶ 9).

---

construes the "Comparison Product" from Plaintiff's initial Complaint to be a 4 oz. bottle of Inglehoffer® Original Stone Ground Mustard.

[7] The Hauser Decl. is being submitted contemporaneously with Beaverton's motion to dismiss.

[8] This Court can take judicial notice of the prices on Beaverton's website because the website is referenced in paragraph 1 of the Amended Complaint.  *See Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428, 431 (S.D.N.Y. 2016) (taking judicial notice of contents of the defendant's website on a motion to dismiss), *aff'd*, 692 F. App'x 51 (2d Cir. 2017); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) ("[T]he Court will consider the Defendant's website, as it was incorporated by reference in the Plaintiff's Complaint."); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 & n.1 (N.D. Cal. 2013) (taking judicial notice of, among other things, screenshots from a website referenced in the complaint and packaging labels for various products specifically referenced in the complaint).

8

## ARGUMENT

**I.     PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE AMENDED COMPLAINT LACKS FACTS TO SUPPORT ITS CONCLUSORY STATEMENT THAT THE PRODUCT'S "NO PRESERVATIVE" LABEL IS MISLEADING**

The Amended Complaint asserts four cause of action:  (1) a claim for an injunction for violations of GBL § 349; (2) a claim for damages for violations of GBL § 349; (3) a claim for damages for violations of GBL § 350; and (4) common law fraud.  (Am. Compl. ¶¶ 62-93). Plaintiff purports to bring these claims on behalf of herself and a putative a class of "[a]ll persons or entities who made retail purchases of the Product in the United States during the applicable limitations period for personal consumption, and not resale," or alternatively, "[a]ll persons or entities who made retail purchases of the Product in New York during the applicable limitations period for personal consumption and not resale . . . ."  (*Id.* ¶ 50).

At the core of Plaintiff's claims is the requirement that she plead facts that demonstrate that the Product's "No Preservative" label is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *See Rodriguez v. Cheesecake Factory Inc.*, No. 16-CV-2006 (JMA)(AKT), 2017 WL 6541439, at *3, *5 (E.D.N.Y. Aug. 11, 2017) (dismissing GBL § 349 and common law fraud claims because the allegedly misleading statement would not mislead a reasonable consumer); *accord Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see also Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 n.1 (2002) (applying identical standard to section 350 claim).[9]

---

[9] Generally speaking, to state a valid claim under § 349, a plaintiff  "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading, and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Oscar v. BMW of N. Am., LLC*, 09 CIV. 11 (PAE), 2012 WL 2359964, at *3 (S.D.N.Y. June 19, 2012) (citing *City of New York v. Smokes–Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009)).  A claim under GBL § 350 requires that the same elements be met; however, GBL § 350 is specific to claims relating

9

Plaintiff fails to allege any facts that support her conclusory claims of misrepresentation. It is well settled that a plaintiff must plead enough facts *in the complaint* to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard is met only when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. City of New York*, No. 15-CV-517 (NGG)(RER), 2016 WL 5395837, at *3 (E.D.N.Y. Sept. 27, 2016) (Garaufis, D.J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)), *aff'd*, 697 F. App'x 36 (2d Cir. 2017); *Twombly*, 550 U.S. at 555 ("[L]abels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." (citations omitted)). A complaint that fails to include enough facts to support each element of the claim is subject to dismissal. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *Solent Freight Servs., Ltd. v. Alberty*, 914 F. Supp. 2d 312, 318 (E.D.N.Y. 2012) (Garaufis, D.J.); *Wills v. Amerada Hess Corp.*, No. 98 CIV. 7126(RPP), 1999 WL 500142, at *1-*2 (S.D.N.Y. July 15, 1999) (striking class claims where the court concluded "the plaintiff is engaged in a fishing expedition" and the allegations "were not 'formed after an inquiry reasonable under the circumstances' in violation of Rule 11"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting class actions create "the risk of 'in terrorem' settlements"); *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012) (noting that, in the class context, "[t]he costs of extensive discovery have long been recognized as a factor forcing defendants to settle even meritless cases"), *objections overruled*, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012).

---

to false advertising, while GBL § 349 sweeps more broadly and covers deceptive business practices generally. *See Goshen*, 98 N.Y.2d at 324 n.1.

### A.      Plaintiff Alleges No Facts that Even Suggest, Let Alone Establish, that the Citric Acid in the Product Actually Functions as a Preservative

Plaintiff's failure to allege any facts supporting the notion that the citric acid contained in the Product actually functions as a preservative dooms her claims.  This should come as no surprise to Plaintiff, since a similar complaint brought by her counsel was dismissed for this exact reason.  *See Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 819-22 (E.D. Pa. 2017) (dismissing GBL § 349 claim alleging defendant misled consumers by including a "No Preservatives Added" label on products containing citric acid because, *inter alia*, plaintiff did not allege facts showing citric acid actually functioned as a preservative in the products at issue).

Under Plaintiff's and the FDA's shared definition, an ingredient is not a "chemical preservative" unless it actually functions as a preservative—*i.e.* unless it actually "tends to prevent or retard [the] deterioration" of the food product to which it is added.  (Am. Compl. ¶ 13 (citing 21 C.F.R. § 101.22(a)(5))).  The FDA's regulations regarding the labeling of "chemical preservative" ingredients are similarly clear and require that an ingredient be disclosed as "chemical preservative" ***only where the ingredient actual functions as a preservative in the product***.  *See* 21 C.F.R. § 101.22(j) ("A food to which a chemical preservative(s) is added shall, except when exempt . . . [,] bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'").

The FDA's position with other food manufacturers is consistent with this function-based approach.  Hauser Decl., Ex. B, at 3 (Warning Letter from FDA to Shemshad Food Products, Inc., dated March 11, 2011) ("If the citric acid *is functioning as a preservative in your finished juice products, that function needs to be included* in accordance with the requirements of section

11

403(k) of the Act [21 U.S.C. § 343(k)] and 21 CFR 101.22(j).") (emphasis added).[10]  And of course that makes common sense—an ingredient is not a preservative and does not require disclosure as a preservative if it is *not functioning as a preservative in a product.*

Here, Plaintiff completely fails to allege any facts that demonstrate that citric acid in the Product actually functions as a preservative.  While Plaintiff alleges that the Product is "preservative laden" (Am. Compl. ¶ 41), she provides no allegations concerning the quantity of citric acid used in the Product.  This is important, since obviously more than trace amounts would be required in order for any ingredient to have any preservative function.  Even Dr. Meyers apparently concedes this in his "expert" declaration.  (*Id.*, Ex. B, ¶ 37 (stating that citric acid "may" have a preservative function in alkaline foods)).  More importantly, the Amended Complaint fails to include any allegations of fact regarding the actual reason that citric acid is included in the Product.  Plaintiff merely claims in a conclusory statement that citric acid, "regardless of the subjective purpose for which this substance is added to the Product," "tends to prevent or retard the deterioration of food," as established by "scientific evidence and FDA statements" cited in her Amended Complaint.  (Am. Compl. ¶ 14).  But the "scientific evidence and FDA statements" to which Plaintiff refers consist only of:  (1) a page from the FDA's website that lists citric acid as one of the "names found on product labels" that contain preservatives (*id.* ¶ 16); (2) the fact that the FDA once sent a warning letter to a different food

---

[10] District courts in the Second Circuit often take judicial notice of public records, including reports and records of the FDA, and consider them on a motion to dismiss.  *See e.g., Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (taking judicial notice of FDA guidance document on motion to dismiss "because the Guidance is publicly available and its accuracy cannot reasonably be questioned" (citation omitted)); *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) ("For the purpose of resolving the present motion [to dismiss], the Court takes judicial notice of public records contained on the FDA website." (citation omitted)).

manufacturer, stating that the *function of* ascorbic acid and citric acid in their products required description (*id.* ¶ 17); (3) the fact that a separate food manufacturer's website—*i.e.*, not a credible scientific source—describes the concentrated citric acid it sells in specified quantities as a "food additive or food grade product" that may be used as "a flavoring and preservative." (*Id.* ¶ 18); and (4) Dr. Meyers' declaration, which includes general facts about the various functions citric acid may have. (*Id.*, Ex. B).

None of these sources remotely establishes that citric acid, regardless of the quantity used and regardless of which food it is part of or added to, always tends to prevent the deterioration of food—let alone that it functions in the Product at issue here to prevent. For instance, although the page of FDA's website cited by Plaintiff notes that citric acid may be a preservative, it does not state that citric acid *always* functions as a preservative, and indeed lists other functions. *See* Hauser Decl., Ex. C (FDA's "Overview of Food Ingredients, Additives & Colors," dated November 2004 and revised April 2010). Similarly, the FDA warning letter cited by Plaintiff notes that the citric acid in products made by a different manufacturer was considered to be a preservative, (Am. Compl., Ex. A), but not that citric acid is a *de facto* preservative under the FDA's definition in every food product. Even the other food manufacturer's website Plaintiff cites does not state that citric acid always acts as a preservative whenever it is used in any product. *See* Hauser Decl., Ex. D (FBC Industries, Inc., "Citric Acid").

Finally, Dr. Meyers' declaration states that citric acid often has a preservative function, and that the amount of citric acid used to impart taste is higher than the amount needed to act as a preservative, but includes no specific claims that citric acid always functions as a preservative, no matter the quantity and no matter the composition of the food to which it is being added. In fact, as noted previously, Dr. Meyers' declaration indicates that citric acid may not have a

preservative function in some instances, as he states that "[t]here are several mechanisms by which citric acid preserves food and beverages, *some of which* apply to almost any" and that in alkaline foods, "citric acid *may* still act as a preservative."  (Am. Compl., Ex. B, ¶ 37 (emphasis added)).  In sum, Plaintiff has alleged that the Product contains citric acid, but nothing more.

The Eastern District of Pennsylvania's recent decision in *Hu v. Herr Foods, Inc.* is instructive.  In *Hu*, a case brought by the same law firm representing Plaintiff in this action, the plaintiff alleged that a variety of snack products manufactured by the defendant violated GBL § 349 because they contained citric acid.  251 F. Supp. 3d at 813.  The defendant moved to dismiss, arguing that the plaintiff failed to allege that citric acid had a preservative function in any of the products at issue.  *Id.* at 820.  In opposition, the plaintiff argued that she had sufficiently pleaded that citric acid functioned as a preservative, citing various websites.  *Id.* at 816, 821.  The court (Judge Robreno) granted the motion to dismiss, finding that citric acid's ability to act as a preservative, as well as its inclusion in other products for that purpose, did not "warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products."  *Id.* at 822; *see also Alce v. Wise Foods, Inc.*, No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *7 (S.D.N.Y. Mar. 27, 2018) (dismissing consumer fraud claims regarding a product container's "slack-fill" where the plaintiff failed to allege, as required to avoid preemption, that the "slack-fill" was non-functional).

Like in *Hu*, the Amended Complaint, does not allege facts that support that citric acid actually functions as a preservative in the Product at issue here.  The Federal Rules protect defendants against complaints like Plaintiff's here, where plaintiffs fail to state adequate facts, and instead use their complaints to initiate fishing expeditions, hoping to find facts that do support their claims in discovery.  *Twombly*, 550 U.S. at 555 ("[T]he pleading must contain

14

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citations omitted).

This should not be tolerated here, and Plaintiff's claims should be dismissed.

**B.      Plaintiff Alleges No Facts that Even Suggest, Let Alone Establish, that the Citric Acid in the Product Is Both a Chemical and Was Added to the Product**

Plaintiff expressly and exclusively relies on what she characterizes as the FDA's definition of preservative, as "defined by the FDA in 21 C.F.R. § 101.22(a)(5)."  (Am. Compl. ¶ 13; *see also id.* ¶ 34 ("[T]he definition of "preservative" as used herein is identical with that of the FDA . . . .").  That regulation does not define "preservative," but rather defines "chemical preservative," as quoted above.  21 C.F.R. § 101.22(a)(5) (emphasis added).

Plaintiff does not allege that the citric acid in Beaverton's product is chemical, or that it was specifically added to the Product.  This failure by Plaintiff is crucial because citric acid can either be "chemical" or "natural," and Plaintiff does not allege which type occurs in the Product. *See Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *4-*5 (N.D. Cal. Mar. 28, 2013) (granting summary judgment in defendant's favor because, among other things, plaintiff failed to prove the citric acid used by the manufacturer was artificial); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *5 (N.D. Cal. May 30, 2014) ("The parties agree that there are two ways to make ascorbic acid and citric acid: chemical synthesis and fermentation."); 21 C.F.R. § 184.1033(a) (citric acid "is a naturally occurring constituent of plant and animal tissues").[11]

In addition, Plaintiff has not pleaded facts that show that citric acid is anything other than an "incidental additive" in the Product.  *See* 21 C.F.R. § 101.100; *see also Alce*, 2018 WL

---

[11] Further, subpart D of part 182 of title 21 of the Code of Federal Regulations provides definitions for a number of ingredients the FDA considers to be "Chemical Preservatives," and citric acid is not included among such ingredients.  *See* 21 C.F.R. §§ 182.3013 *et seq.*

1737750, at *7.   Incidental additives are exempt altogether from disclosure.  This too is key, because under the GBL it is a "complete defense that [an allegedly deceptive] act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by . . . any official . . . agency of the United States as such rules, regulations or statutes are interpreted by . . . federal courts."  GBL § 349(d); *accord id.* §350-d.

## II.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE INJURY CAUSED BY BEAVERTON'S CONDUCT

On top of her myriad other failures, Plaintiff fails to adequately allege a cognizable injury.  A "plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oscar*, 2012 WL 2359964, at *3; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 26 (1995).  Plaintiff's fraud claim also requires that she plead a cognizable injury.  *See Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017).

By seeking an "amount up to the purchase price" (Am. Compl. ¶ 41), Plaintiff asserts a "deception as injury" theory—a theory that has been flat out rejected as insufficient to allege a claim for consumer fraud under New York law.  *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999).  In *Small*, the New York Court of Appeals flatly rejected claims by plaintiffs who sought damages under GBL § 349 equal to "reimbursement of the purchase cost of cigarettes that they claim they would not have bought, but for defendants' fraudulent and deceptive practices." *Id.* at 51.  The Court of Appeals found no cognizably injury, ruling that by "confin[ing] the relief sought solely to monetary recoupment of the purchase price of the cigarettes," the plaintiffs' claim wrongly "sets forth deception as both act and injury."  *Id.*; *see also Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) ("Section 349 does not entitle a consumer to

a refund of the price of a good or service whose purchase was allegedly secured by deception."),

*aff'd*, 531 F. App'x 110 (2d Cir. 2013).  In addition, after dismissing the GBL claims, the Court

of Appeals held that the plaintiffs' common law fraud claims required dismissal for the same

reason.  *Small*, 94 N.Y.2d at 57; *see also Belcastro*, 2017 WL 744596, at *6 (dismissing common

law fraud claim because "New York law does not permit a plaintiff to allege 'actual damages'

based solely on his claim that he would not have chosen to purchase the good but for the

defendant's misrepresentation or that he believed he was getting a better bargain than turned out

to be the case.").

Like the unsuccessful plaintiffs in *Small*, Plaintiff here seeks to use Beaverton's

purported deception in labeling the Product as containing "No Preservatives" as both the act and

injury.  This fails.

Plaintiff's "premium price" allegations fare no better.  (Am. Compl. ¶ 41).[12]  Although

well-pleaded allegations that a plaintiff paid a price premium may be sufficient to allege injury,

bare conclusory assertions are not.  Plaintiff fails to provide any facts to support *her* conclusory

allegation that the $2.51 she purportedly paid at Target for the Product constituted a "price

premium."

The recent decision in *Izquierdo v. Mondelez Int'l, Inc*. confirms that "[s]imply . . .

recit[ing] the word 'premium' multiple times in the[] Complaint does not make Plaintiffs' injury

any more cognizable."  2016 WL 6459832, at *7.  In *Izquierdo*—another case brought by the

---

[12] While Plaintiff makes these conclusory "price premium" allegations, it is clear that her true
claim is that she is entitled to the full purchase price under the improper "deception as injury"
theory rejected by the New York Court of Appeals in *Small*.  This is evident from the fact that
the only specific amount of damages she seeks in the paragraphs of the Amended Complaint
specifically addressing her claim for money damages under the GBL or for common law fraud
(*see* Am. Compl. ¶¶ 71-93) is "monies spent to purchase the Product."  (*Id.* ¶ 78).

same counsel that represents Plaintiff here—the named plaintiff alleged that he purchased mislabeled candy from a movie theater for a "premium price of $4.29 (or more)" and even went so far as to identify several other types of candies that were cheaper in order to demonstrate that the price he paid was a premium price.  The court wholly rejected such allegations as sufficient. *Id.*, at *7; *see generally Iqbal*, 556 U.S. at 678.  The *Izquierdo* court also rejected the claims for another reason relevant here—the complaint did not state whether the defendant manufacturer, as opposed to the movie theater, set the price and thereby "benefited from any price inflation." 2016 WL 6459832, at *7.

Here, too, Plaintiff alleges in only a conclusory fashion that a "price premium" was paid for the Product, but does not include any factual support.  She does not even allege the premium associated with a "No Preservatives" label, or identify a comparison product.[13]  Further, while Plaintiff's premium theory is based on "the difference between the actual value of the Product and the value of the Product as misrepresented to [the class] by Defendant," just as in *Izquierdo*, Plaintiff does not allege that Beaverton, as opposed to the Target location where she purchased the Product, established the $2.51 price she purportedly paid for the Product.  Accordingly, Plaintiff has failed to allege a cognizable injury, an essential element for each of her claims.

**III.   PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE BAR ON CIRCUMVENTION**

In New York, it is well established that a Plaintiff may not use either the GBL or common law tort claims to circumvent the lack of a private right of action under another statute. *See e.g.*, *Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 3-4 (2d Cir. 2016) (upholding dismissal of GBL § 349 claim predicated on violation of a New York statute lacking private

---

[13] In fact, the 4 oz. Comparison Product included in the initial Complaint (D.E. 1, ¶ 28), which was removed by Plaintiff from her Amended Complaint, conclusively demonstrates that there is no price premium.  *See supra* at p.8.

18

cause of action that regulates unlicensed sale of dental services); *Sigall v. Zipcar, Inc.*, 582 F. App'x 18, 20 (2d Cir. 2014) (upholding dismissal of GBL § 349 claim predicated on violation of a New York statute lacking private cause of action that prohibits rental car companies from deceptively debiting charges for vehicle damage).

Under this doctrine, referred to as the "bar on circumvention," where a plaintiff uses a state tort claim to assert a claim against a defendant for failing to comply with a state or federal statute that itself lacks a private right of action, such claim must be dismissed. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005). When analyzing whether a state tort claim is barred by the bar on circumvention, courts generally look to whether the claim is "free-standing" from another statute that lacks private enforcement rights. *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 173 (2013) (quoting *Broder*, 418 F.3d at 200). If the claim is not "free-standing", and instead solely seeks to privately enforce a statute that lacks a private action, the claim is barred. *Verzani v. Costco Wholesale Corp.*, No. 09-CIV-2117 (CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d Cir. 2011); *accord Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK)(DEP), 2018 WL 1870474, at *9 (N.D.N.Y. Apr. 17, 2018) ("Any state law claim premised upon violations of the FDCA therefore cannot survive a motion to dismiss." (citing *Verzani*, 2010 WL 3911499, at *3)).

Here, Plaintiff seeks to do nothing more than enforce (inapposite) FDA labeling requirements for "chemical preservatives," for which no private right of action exists. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MDL-1596, 2007 WL 2332544, at *1 (E.D.N.Y. Aug. 15, 2007). Plaintiff's proffered definition of "preservative" is identical to the definition of "chemical preservative" set forth in 21 C.F.R. § 101.22. (Am. Compl. ¶ 13). Indeed, Plaintiff expressly states that, in order to avoid having her claims *preempted* for imposing different labeling

19

requirements than those required by the FDA, "the definition of 'preservative' as used [in the Amended Complaint] is identical with that of the FDA." (*Id.* ¶ 34). This is crucial because 21 C.F.R. § 101.22 not only defines "chemical preservative," it also contains specific requirements for how chemical preservatives must be identified on the product label. *See* 21 C.F.R. §§ 101.22(c), (j). As such, Plaintiff's claims are completely reliant on the FDA's labeling requirements for "chemical preservatives," and fail if Beaverton has complied with those (and/or other) FDA requirements.

Such reliance on the FDA requirements necessitates dismissal. In *Verzani*, the court dismissed a GBL § 349 claim predicated on a violation of the FDCA. The plaintiff in that case had complained that a "Shrimp Tray" was mislabeled because a reasonable consumer would construe the weight disclosure on the product's label to refer to the weight of the shrimp in the product, and not the weight of the shrimp plus the other items included in the "Shrimp Tray," such as lemon wedges, lettuce, and cocktail sauce. 2010 WL 3911499, at *2. In support of his allegations, the plaintiff alleged that the "Shrimp Tray" was misbranded under the FDCA. *Id.* at *3. The court dismissed the claim:

> Verzani's persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA and the Food and Drug Administration's regulations on the labeling of "shrimp cocktails" indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices under G.B.L. § 349. As such, Verzani's proposed G.B.L. § 349 claim premised on violations of the FDCA could not survive a motion to dismiss.

*Id.* (internal citations omitted).

Similarly, in *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997), the defendant alleged counterclaims under the Lanham Act, Georgia's Uniform Deceptive Trade Practices Act, and Georgia's False Advertising Law on the basis that the plaintiff had falsely represented and advertised to consumers that its products were FDA-approved when they actually were not. *Id.*

at 1107.  The Second Circuit affirmed the dismissal of the counterclaims, holding that the

defendant, as a competitor of the plaintiff, did not have standing to assert his claims.  *Id.* at 1112.

The Second Circuit then went on to state that the defendant's

> dogged insistence that [the plaintiff's] products are sold without proper FDA
> approval suggests . . . that [the defendant's] true goal is to privately enforce
> alleged violations of the FDCA.  *See Friedlander v. PDK Labs Inc.*, No. 1:93–cv–
> 2706–ODE (N.D.Ga.1994) (Friedlander's suit represents an "impermissible
> attempt to enforce the FDCA through a private action").  However, no such
> private right of action exists.

*Id.* at 1113.  Accordingly, the Second Circuit affirmed dismissal.

Like in these cases, Plaintiff's claims are not free-standing, but rather really seek "to

privately enforce alleged violations of the FDCA." *PDK Labs, Inc.*, 103 F.3d at 1113.  The

Amended Complaint runs afoul of the bar on circumvention and should be dismissed.

## IV.   PLAINTIFF'S COMMON LAW FRAUD CLAIM MUST BE DISMISSED BECAUSE SHE FAILS TO SUFFICIENTLY ALLEGE FRAUDULENT INTENT

Even were Plaintiff to escape all of the above hurdles, Plaintiff's fraud claim must be

dismissed because she fails to allege any facts that show fraudulent intent.  As a general matter,

to plead a common law fraud claim, Plaintiff must allege (1) "a material misstatement"; (2)

"known by the perpetrator to be false"; (3) "made with an intent to deceive"; (4) "upon which the

plaintiff reasonably relies"; and (5) damages.  *Rotterdam Ventures, Inc. v. Ernst & Young LLP*,

300 A.D.2d 963, 964 (3d Dep't 2002) (citation and quotation marks omitted).  Fraud claims also

must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. 2014).

Importantly, to plead a fraud claim, the law requires allegations of specific facts "that

give rise to a *strong inference* of fraudulent intent."  *Id.* (emphasis added; citation omitted);

*accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  This requires

either (a) alleging facts to show that defendants had both motive and opportunity to commit

fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *See id*.  A generalized motive to increase sales and profits "does not support a strong inference of fraudulent intent."  *Dash*, 27 F. Supp. 3d at 362 (citations omitted).  Courts routinely dismiss common law fraud claims in similar cases where the complaint failed to allege facts that give rise to a strong inference of fraudulent intent.  *See, e.g.*, *Davis v. Hain Celestial Grp., Inc*, 297 F.Supp.3d 327, 337 (E.D.N.Y. Apr. 3, 2018) (finding that allegations that "[d]efendants knew that other juice products more accurately represented their products" failed to adequately plead fraudulent intent in a case alleging mislabeling on juice products); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016) ("To the extent that the FAC could be construed as pleading that BMW acted to increase sales/profits, a generalized motive that could be possessed by any corporate actor or director or officer is insufficient."); *Dash*, 27 F. Supp. 3d at 362–63 (dismissing fraud claim because allegations that manufacturer "intentionally concealed and failed to disclose the true facts about the . . . [p]roducts" to induce consumers to purchase the product were conclusory and failed to adequately plead fraudulent intent).

Here, Plaintiff's allegations regarding Beaverton's motive to commit fraud overwhelmingly fail.  Plaintiff alleges that Beaverton "has capitalized on consumer's preference for less processed foods with fewer additives and the association between such products and a wholesome way of life."  (Am. Compl. ¶ 46).  Purportedly in support of this allegation, Plaintiff states that "[c]onsumers are willing to pay more for less processed products with no additives." (*Id.* ¶ 47).  Plaintiff also alleges that Beaverton "has a natural interest in misrepresenting the Product as free of preservatives" because the "No Preservative" label "provides a clear marketing advantage over competitors that do not engage in such deceptive conduct."  (*Id.* ¶ 48).

22

Finally, Plaintiff alleges, upon information and belief, that Beaverton "employs food scientists who are familiar with the basic properties of citric acid," and therefore Beaverton "knew that citric acid was a preservative." (*Id.* ¶ 49).

These allegations are woefully insufficient.  "The simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis*, 297 F. Supp. 3d at 337 (citation omitted); *see also Rodriguez*, 2017 WL 6541439, at *5-*6 & n.7.  Such conclusory allegations of fraud cannot survive Rule 9(b)'s heightened pleading standard and, therefore, should be dismissed.

## V.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiff lacks standing to assert any claims for injunctive relief.  To have such standing, a plaintiff must allege a "likelihood of *future or continuing harm*."  *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) (emphasis in original; citation omitted).  "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (dismissing claim for injunctive relief where the named plaintiff in a putative class action alleging mislabeling on hair care and body wash products failed to "demonstrate[] a likelihood of future injury").

Here, Plaintiff alleges that she would not have purchased the Product "had she known the truth" and that, if she were to encounter the product in the future, "she could not rely on the truthfulness on the packaging, absent corrective changes to the packaging."  (Am. Compl. ¶ 9). This prohibits Plaintiff from seeking injunctive relief, as she obviously will not purchase the Product as it is currently labeled in the future.  *See, e.g.*, *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (affirming dismissal of claim for injunctive relief because

plaintiff "fail[s] to allege that he intends to [purchase the offending product] in the future")

(alterations in original); *Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived

by defendants' products, he is now aware of the truth and will not be harmed again in the same

way. He therefore lacks standing to seek an injunction."); *DaCorta v. AM Retail Grp., Inc.*, No.

16-CV-01748 (NSR), 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) (dismissing claim for

injunction because the plaintiff's claim that she would not have purchased the product at issue

"but for [the defendant's] false misrepresentation . . . is effectively a concession that she does not

intend to purchase the product in the future."). Accordingly, Plaintiff's claims for injunctive

relief must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Beaverton's Motion to Dismiss Plaintiff's Amended

Complaint should be granted, and Plaintiff's claims, which she has now already had the

opportunity to replead, should be dismissed with prejudice.

24

Dated: June 28, 2018
New York, New York

Respectfully submitted,


By: ___/s/ Sandra D. Hauser_____
     Sandra D. Hauser
     Dentons US LLP
     1221 Avenue of Americas
     New York, New York 10020
     Tel: (212) 768-6700
     Fax: (212) 768-6800
     sandra.hauser@dentons.com

     Michael J. Duvall (admitted *pro hac vice*)
     601 South Figueroa Street, Suite 2500
     Los Angeles, California 90017-5704
     Tel: (213) 623-9300
     Fax: (213) 623-9924
     michael.duvall@dentons.com

     ATTORNEYS FOR DEFENDANT
     BEAVERTON FOODS, INC.

107678678\V-7