**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

DANIELA QUIROZ, *on behalf of herself and*
*others similarly situated*,

                                 Case No. 17-cv-07348-NGG-JO

                 Plaintiff

                v.

BEAVERTON FOODS, INC.,

                 Defendant.

-------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………ii

INTRODUCTION ……………………………………………………………1

ARGUMENT …………………………………………………………………2

    I.    PLAINTIFF' CLAIMS ARE "FREE-STANDING" AND NOT
        PRECLUDED BY THE BAR ON CIRCUMVENTION…………………………..2

    II.    PLAINTIFF PLAUSIBLY ALLEGES MATERIAL DECEPTION ………………6

          A.  Plaintiff Plausibly Alleges that Citric Acid Functions
              as a Preservative in the Product …………………………………………6

          B.  Whether the Citric Acid in the Product is a "Chemical"
              is Either Irrelevant or a Matter of Common Sense …………………………10

    III.    PLAINTIFF PLAUSIBLY ALLEGES INJURY …………………………………13

    IV.    PLAINTIFF PLAUSIBLY ALLEGES FRAUDULENT INTENT ………………17

    V.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF………………18

CONCLUSION ………………………………………………………………19

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................... 22

*Arista Records Ltd. Liab. Co. v. Doe*,
   604 F.3d 110 (2d Cir. 2010) ................................................................................................ 13

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................................................... 2, 3

*Belfiore v. Procter & Gamble Co.*,
   F. Supp. 3d 440 (E.D.N.Y. 2014)........................................................................................ 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 2, 8

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-CV-01831, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014) ....................... 14

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)................................................................................................... 3

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) .................................................................................. 18

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) ............................................................................. 16, 20

*Delgado v. Ocwen Loan Servicing Company, LLC*,
   2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014)..................... 22

*Ebin v. Kangadis Food Inc.*,
   2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)...................... 16

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................................... 2

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ..................................................................................................... 1

*Gitson v. Trader Joe's Co.*,
   No. 13-cv-01333, 2014 U.S. Dist. LEXIS 33936 (N.D. Cal. Mar. 14, 2014).......................... 10

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)...................................................................................... 19

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017)..................................................................................... 18

*Hanley v. Chicago Title Ins. Co.,*
  No. 12- 4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013)....................................................... 2

*Hu v. Herr Foods Inc.*
  No. 2:16-cv-05037-ER, Dkt. 42  (E.D.Pa. Sept. 25, 2017) ................................................... 7, 9

*Hu v. Herr Foods, Inc.,*
  251 F. Supp. 3d 813 (E.D. Pa. 2017) ..................................................................................... 8

*Hughes v. Ester C Co.,*
  930 F. Supp. 2d 439 (E.D.N.Y. 2013)................................................................................... 20

*Izquierdo v. Mondelez Int'l, Inc.,*
  No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................ 18

*Jones v. Conagra Foods, Inc.,*
  912 F. Supp. 2d 889 (N.D. Cal. 2012) .................................................................................. 14

*Koehler v. Litehouse, Inc.,*
  2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ..................... 22

*Koenig v. Boulder Brands, Inc.,*
  995 F. Supp. 2d 274 (S.D.N.Y. 2014).................................................................................... 20

*Leonhart v. Nature's Path Foods, Inc.,*
  No. 13-cv-00492-BLF, 2014 U.S. Dist. LEXIS 164425 (N.D. Cal. Nov. 21, 2014) ............... 10

*O'Brien v. Nat'l Prop. Analysts Partners,*
  936 F.2d 674 (2d Cir. 1991).................................................................................................. 21

*Orlander v. Staples, Inc.,*
  802 F.3d 289 (2d Cir. 2015).................................................................................................. 19

*PDK Labs, Inc. v. Friedlander,*
  103 F.3d 1105 (2d Cir. 1997))................................................................................................. 6

*Raines v. Byrd,*
  521 U.S. 811 (1997) ............................................................................................................. 23

*Ries v. Ariz. Bevs. USA LLC*
  No. 12-CV-01831LHK, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. Mar. 28, 2013)................ 14

*Servedio v. State Farm Ins. Co.,*
  889 F. Supp. 2d 450 (E.D.N.Y. 2012).................................................................................... 16

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (1999) ............................................................................................................. 15

*Stoltz v. Fage Dairy Processing Indus., S.A.,*
  2015 U.S. Dist. LEXIS 126880, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015)..................... 19

*Verzani v. Costco Wholesale Corp.*,
   No. 09-CIV-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d
   Cir. 2011) ...................................................................................................................... 5

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ...................................................................................... 20

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976) ..................................................................................................... 1

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ..................................................................................... 2

## Statutes

21 U.S.C. § 343 (a)(1) ........................................................................................................... 5

NY GBL § 349 .................................................................................................................. 3, 5

NY GBL § 350 ..................................................................................................................... 3

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

## Regulations

21 C.F.R. § 101.22(a)(5) ................................................................................................. 4, 6, 9

21 C.F.R. § 184.1033(a) ....................................................................................................... 10

## INTRODUCTION

Plaintiff DANIELA QUIROZ ("Plaintiff" or "Plaintiff Quiroz") hereby respectfully submits this Opposition to Defendant BEAVERTON FOODS, INC.'s ("Defendant" or "Beaverton") Motion to Dismiss the Amended Complaint ("Def. Mem.").   On December 18, 2017, Plaintiff brought a Class Action Complaint seeking redress for the unfair, deceptive and otherwise improper business practices whereby Defendant markets and labels its 10 oz. Inglehoffer® Original Stone Ground Mustard (the "Product").  On June 7, 2018, Plaintiff filed an Amended Complaint ("Am. Compl.").  On June 28, 2018, Defendant served its Motion to Dismiss the Amended Complaint, which Plaintiff here opposes.

In reliance on Defendant's label misrepresentations that the Product contains "No Preservatives," Plaintiff Quiroz purchased the Product for personal consumption from a Target store in Elmhurst, Queens for the premium price of $2.51.  However, the Product actually contains citric acid, a well-known preservative.  Plaintiff and Class members were therefore injured when they were deceived into purchasing a product whose value as delivered was substantially less than its value as warranted.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).  A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.,* No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d

Cir. 2010)). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).  Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id*. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.  However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937.  Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS ARE "FREE-STANDING" AND NOT PRECLUDED BY THE BAR ON CIRCUMVENTION

Defendant charges that Plaintiff's claims violate the "bar on circumvention" because she "uses a state tort claim to assert a claim against a defendant for failing to comply with a state or federal statute that itself lacks a private cause of action."  Def. Mem., pg. 19.  While Defendant cites *Broder v. Cablevision Sys. Corp*. in support of this argument, the difference between *Broder* and the instant action highlights the frivolity of the argument.  In *Broder*, plaintiff argued that defendant cable company violated NY GBL § 349's prohibition against deceptive trade practices when it failed to provide him with notice of certain cable rates, as was required by federal and state law (both of which lacked private causes of action).  The court disagreed and explained:

> [Plaintiff] does not make a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under PSL § 224-a(4). He claims, instead, that "Defendants' conduct in failing to provide plaintiff and the Class . . .

with the notice of the Winter Season rates as required under PSL § 224-a(4) constitutes materially deceptive acts or practices" actionable under GBL § 349.

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005)

The Second Circuit affirmed the district court's dismissal of plaintiff's claim because it determined that the "district court did not impair, abrogate, or restrict any right that Broder would have had in the absence of PSL § 224-a." *Id*. at 200. This was because the plaintiff could not state his NY GBL § 349 without reference to the federal and New York laws that lacked a private right of action. There was nothing inherently deceptive about a mere failure to inform a consumer about certain cable rates. It was only the federal and New York laws requiring such notification that made this illegal. Hence plaintiff's failure to make a "free-standing claim of deceptiveness."

By contrast, Plaintiff Quiroz does make a "free-standing claim of deceptiveness," because the contradiction between Defendant's "No Preservatives" representation and the truth about citric acid does not depend on the existence of any law lacking a private cause of action. The meaning of "preservatives" is established, not by statute, but by the understanding of the reasonable consumer, who understands a preservative to be a substance that prevents or retards food spoilage. Likewise, citric acid's preservative properties have been established by scientific testing and research (see above), not statute. Thus, Plaintiff's allegation that Defendant violated NY GBL § 349's and NY GBL § 350's prohibition against deceptive practices is "free-standing," because it does not depend on the existence of the FDCA or its implementing regulations. "No Preservatives" would remain false and deceptive even if the FDCA had never been enacted. Plaintiff's claims under GBL § 349 and common law may "happen[] to overlap" with violations of the FDCA, but *Broder* does not bar such actions.

Defendant harps on the fact that "Plaintiff's proffered definition of 'preservative' is identical to the definition of 'chemical preservative' set forth in 21 C.F.R. § 101.22," Def. Mem.,

pg. 19, as support for its "bar on circumvention" argument.  However, the fact that Plaintiff employs an FDA definition as a useful articulation of what reasonable consumers understand by "preservatives" does not render her claim any less "free-standing."  According to the FDA, a preservative is "any chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5).  This is a very common sense definition of a preservative, and this common sense would remain intact even if 21 C.F.R. § 101.22(a)(5) had never been promulgated.  Plaintiff's and the FDA's definition of a preservative "happen[] to overlap," but the former does not depend on the latter.  Rather, it depends on common sense, from which the FDA definition itself derives.

Defendant repeatedly insists that Plaintiff is attempting to "enforce… FDA labeling requirements for 'chemical preservatives,' for which no private right of action exists." Def. Mem., pg. 19.  But this assertion is straightforwardly belied by the face of the complaint.  Plaintiff's claims concern Defendant's affirmative representation on the front label that the Product contains "No Preservatives."  The Complaint <u>makes no allegations</u> regarding whether Defendant was obligated to identify citric acid as either a preservative or a chemical preservative in the ingredients statement, which is the subject of the relevant FDA regulations.  *See* Am. Compl. ¶ 1 ("Defendant falsely represents the Product as having 'No Preservatives' when it actually contains the preservative citric acid. The false misrepresentations are made on the label or wherever the label is reproduced online."); Am. Compl. ¶ 2 ("By marketing the Product as having 'No Preservatives', Defendant wrongfully capitalizes on and reaps enormous profits from consumers' strong preference for food products made free of preservatives.").

Defendant cites two cases for the idea that a plaintiff's "persistent allegations" or "dogged insistence" that a defendant's labeling violates the FDCA betrays an illicit effort to piggy-back on

the FDCA and its implementing regulations.  *See* Def. Mem., pgs. 20-21 (quoting *Verzani v. Costco Wholesale Corp.*, No. 09-CIV-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d Cir. 2011), and *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)). But Defendant does not explain what this "dogged insistence" consists in by reference to the actual language of the Amended Complaint.  The only federal labeling requiring that Plaintiff accuses Defendant of violating is 21 U.S.C. § 343(a)(1), according to which "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." *See* Am. Compl. ¶ 30. Obviously, invoking this general prohibition against deceptive practices does not show that Plaintiff is attempting to circumvent the lack of a private right of action under the FDCA, since such representations are also prohibited under state consumer protection statutes and common law. *See* Am. Compl. ¶ 32 ("Independently of these laws, Defendant's deceptive misrepresentations also violate NY GBL § 349, which declares unlawful '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'").  The simple fact is that the FDA has not promulgated any regulations concerning when affirmative "No Preservatives" claims are permissible.  Accordingly, it is logically impossible that Plaintiff piggy-backs on federal regulations.

    *Hu v. Herr Foods Inc*. rejected an argument identical to Defendant's.  The defendant in *Hu* argued that the plaintiff's claim that it deceptively labeled its products as containing "no preservatives" violated the bar on circumvention because that claim depended on federal regulations.  But the court observed:

> Plaintiff's claims are not precluded by the bar on circumvention, which prohibits a private action under GBL § 349 solely premised on the violation of a federal statute lacking a private right of action… Plaintiff's claim is not premised on a violation of 21 C.F.R. § 101.22(a)(5), which requires that food packaging ingredient panels contain the description "preservative" for any ingredient that functions as a preservative, and Defendant does not identify any other federal statute or regulation pertaining to the use of preservatives in food packaging. Defendant nonetheless argues that Plaintiff's claim is not free-standing because (1) Plaintiff uses a definition of preservative that is "substantively identical" to the one used in 21 C.F.R. § 101.22(a), Herr Br. at 23; and (2) Plaintiff's claim must be identical to

federal legal standards because 21 U.S.C. § 343-1(a) preempts any food labeling requirement that is "not identical to" a relevant federal standard, id. at 22-23 (quoting 21 U.S.C. § 343-1(a)).

Defendant's logic misconstrues § 343-1(a), which only preempts state food labeling requirements that create the same type of requirements as Food and Drug Administration ("FDA") regulations and yet are not identical to those requirements… For example, under § 343-1(a), states cannot promulgate requirements for food packaging ingredient panels that are not identical to the requirements in 21 C.F.R. § 101.22(a)(5). Plaintiff's claim does not implicate the same "type" of requirements as § 101.22(a) because it does not relate to statements on an ingredient panel. Instead, Plaintiff's claim relates to statements on a different part of the package, which are solely subject to the FDA's food labeling regulations for "implied nutrient content claims." See 21 C.F.R. § 101.65. Those regulations, in turn, do not contain any requirement regarding preservatives. The regulations specifically state that "[a] claim about a substance that is nonnutritive or that does not have a nutritive function, e.g. 'contains no preservatives,'" is not an implied nutrient content claim and therefore not subject to the requirements of § 101.65. 21 C.F.R. § 101.65(b)(2).

*Hu v. Herr Foods Inc*. No. 2:16-cv-05037-ER, Dkt. 42, pg. 4 n.4 (E.D. Pa. Sept. 25, 2017). *See* Declaration of C.K. Lee, **Exhibit A**.

## II.    PLAINTIFF PLAUSIBLY ALLEGES MATERIAL DECEPTION

### A.  Plaintiff Plausibly Alleges that Citric Acid Functions as a Preservative in the Product

Defendant attributes to Plaintiff the view that a substance is preservative only if "it actually functions as a preservative." Def. Mem., pg. 11. However, Plaintiff only endorsed a definition of preservatives according to which a preservative "tends to prevent or retard deterioration [of food]." Am. Compl. ¶ 13 (citing 21 C.F.R. § 101.22(a)(5)). Furthermore, Plaintiff makes clear that she does not equate "tends" with "actually functions." Since the MacMillan Dictionary defines "tends" as "to usually do a particular thing," *see* Am. Compl. ¶ 14, it follows that "it is not necessary that it function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency." Am. Compl. 19. Defendant does not offer any reason to dispute Plaintiff's interpretation of the FDA definition. But even if the FDA does understand "tends to" as synonymous with "actually," it does not follow that the FDA

6

understanding is binding in a consumer fraud action, since Plaintiff is not attempting to enforce FDA labeling requirements (as explained above).  *See Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017) ("The Court is not persuaded by Defendant's argument that the only reasonable definition of a preservative, as a matter of law, is the FDA definition.").

At any rate, the Declaration of Dr. Marc Meyers provides ample support for the inference that citric does actually function as a preservative in the Product.  *See* Am. Compl. ¶¶ 21-28, Exhibit B.  Defendant dismisses Dr. Meyers as a "purported" food science expert, *see* Def. Mem., pg. 6, but it does not offer any concrete reasons to doubt his qualifications, which are fully laid out in his Declaration.  Defendant also charges that "Dr. Meyers did not test the Product."  Def. Mem., pg. 1, n.1.  But while an actual product test might be required to prevail on a plaintiff's motion for summary judgment or at trial, here Plaintiff need only "nudge" her allegations "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 548.  And the opinion of a food science Ph.D. with nearly 30 years of experience in the field surely suffices for this.

Apparently disagreeing with this, Defendant cites *Hu v. Herr Foods* as an "instructive" case:

> The Eastern District of Pennsylvania's recent decision in *Hu v. Herr Foods, Inc.* is instructive. In *Hu*, a case brought by the same law firm representing Plaintiff in this action, the plaintiff alleged that a variety of snack products manufactured by the defendant violated GBL § 349 because they contained citric acid. 251 F. Supp. 3d at 813. The defendant moved to dismiss, arguing that the plaintiff failed to allege that citric acid had a preservative function in any of the products at issue. *Id.* at 820. In opposition, the plaintiff argued that she had sufficiently pleaded that citric acid functioned as a preservative, citing various websites. *Id.* at 816, 821. The court (Judge Robreno) granted the motion to dismiss, finding that citric acid's ability to act as a preservative, as well as its inclusion in other products for that purpose, did not "warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products." *Id.* at 822

Def. Mem., pg. 14

Plaintiff is in full agreement with Defendant that *Hu* is an instructive case.  However, she notes that the decision cited by Defendant pertained to Hu's <u>First</u> Amended Complaint, which <u>lacked</u> an

expert report.  Upon dismissal, that complaint was amended again to include such a report.  And

this <u>Second</u> Amended Complaint was <u>not</u> dismissed:

> First, Plaintiff plausibly alleges that the statement "No Preservatives Added" on Defendant's packaging for the products at issue ("the Products") is materially misleading because citric acid functions as a preservative in the Products. See SAC ¶¶ 21-37. This allegation is supported by the declaration of a food expert, Dr. Marc Meyers, who explains that "irrespective of Defendant's motivations for inserting citric acid in its snack foods (e.g., as a flavoring agent), the citric acid invariably functions as a preservative, because all of the Products at issue in this case contain enough fat to trigger citric acid's preservative qualities." Id. ¶ 37. Defendant argues that Plaintiff's allegations are "speculative and implausible" because Plaintiff's expert is not qualified to offer an opinion and his sources are irrelevant. Herr Br. at 5-10. Defendant's arguments regarding Dr. Meyers' qualifications and the factual basis for his opinions are properly made in support of a motion for summary judgment or motion to exclude expert testimony, not a motion to dismiss. Plaintiff's allegations are sufficient to state a claim at this stage.

*Hu v. Herr Foods Inc*. No. 2:16-cv-05037-ER, Dkt. 42, pgs. 3-4 n.4 (E.D.Pa. Sept. 25, 2017).  *See* Declaration of C.K. Lee, **Exhibit A**.

As Defendant suggests, the Court should follow this most instructive case, which just happens to mean denying Defendant's motion to dismiss.

Furthermore, it bears noting that courts have allowed "no preservative" claims to survive motions to dismiss even in absence of an accompanying expert report.  In *Gitson v. Trader Joe's Co.*, defendant Trader Joe's Co. faced a class action lawsuit alleging that its products used citric acid and sodium citrate without disclosing those ingredients' function as chemical preservatives. Trader Joe's Co. moved to dismiss, asserting that its citric acid and sodium citrate did not function as preservatives in the relevant products.  Yet the court determined that plaintiffs had alleged sufficient facts to meet the heightened pleading requirement of Rule 9(b) (not implicated in Plaintiff's NY GBL claims):

> Trader Joe's provides no support for its contention that citric acid and sodium citrate do not fall under 21 C.F.R. § 101.22(a)(5)'s definition. At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors or chemical preservatives. At this juncture, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Accordingly, the plaintiffs have

adequately alleged their claims regarding the purchased Undisclosed Additives Products under Rule 9(b).

*Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2014 U.S. Dist. LEXIS 33936, at \*13-14 (N.D. Cal. Mar. 14, 2014)

While Defendant cites ample case law concerning general pleading requirements under NY GBL §§ 349, 350, it does not cite a single case in which a complaint comparable to Plaintiff's was dismissed under Rule 12(b)6. *See Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 U.S. Dist. LEXIS 164425, at \*19 (N.D. Cal. Nov. 21, 2014) ("Defendant's argument that tocopherol is not actually a chemical preservative presents a factual issue not appropriate for determination at the pleading stage.")

Defendant also complains that the Amended Complaint contains no allegations regarding "the actual purpose of citric acid in the Product," Def. Mem., pg. 6, or "the actual reason that citric acid is included in the Product." Def. Mem., pg. 12. This is for good reason, as these issues have no arguable legal relevance. Even if it is conceded that a substance must actually function as a preservative in a product in order to qualify as such, Defendant's subjective intent has no bearing on function, which is a matter of scientific fact, not human purposes. Nor is there any reason to think that a reasonable consumer would care about Defendant's subjective intent, since this does not affect the physiological effects of preservatives. 21 CFR § 101.22(a)(5) does limit the definition of "chemical preservative" based on manufacturer intent for <u>some</u> preservatives. Specifically, "chemicals applied <u>***for***</u> their insecticidal or herbicidal properties," (emphasis added) are not classified as preservatives even if they otherwise fall under the FDA definition. However, neither of these two purpose-based exceptions to the general definition of a preservative are applicable to the citric acid in the Products.

### B.  Whether the Citric Acid in the Product is a "Chemical" is Either Irrelevant or a Matter of Common Sense

Next, Defendant argues that Plaintiff has failed to allege that the citric acid in the Product is a *chemical* preservative and that this is crucial given that "Plaintiff expressly and exclusively relies on what she characterizes as the FDA's definition of preservative."  Def. Mem., pg. 15.  But this false premise, that Plaintiff's claims depend on the FDCA, has already been disposed of above, in Plaintiff's refutation of Defendant's frivolous "bar on circumvention" argument.  While it may be true that only chemical preservatives need to be identified in the Product's ingredients statement, this action does not concern the ingredients statement.  Defendant labeled the Product as having "No Preservatives," not as having "No Chemical Preservatives," and this is what Plaintiff alleges is deceptive and misleading.  In the same vein, Defendant also argues that "Plaintiff has not pleaded facts that show that citric acid is anything other than an 'incidental additive' in the Product," Def. Mem., pg. 15, incidental additives being "exempt altogether from disclosure."  Def. Mem., pg. 16. But again, this case has nothing to do with what should have been disclosed on the ingredients list.

Even if the citric acid's status as a chemical was relevant, there would be no reason to doubt it.  Defendant argues that "citric acid often is naturally occurring (*e.g.*, it is present in lemons, oranges, garlic, etc.)," Def. Mem., pg. 2, and that "FDA regulations recognize that citric acid is 'a naturally occurring constituent of plant and animal tissues, 21 C.F.R. § 184.1033(a), and only occasionally, a synthetic additive."  Def. Mem., pg. 5.  But while citric acid was directly extracted from lemons and other fruits in the 19th Century, this does not describe citric acid today.  Today, citric acid is manufactured industrially, usually through the process of fermentation, which is defined as "[a]ny of a group of chemical reactions induced by microorganisms or enzymes that

split complex organic compounds into relatively simple substances."[1]   Thus, citric acid is a chemical preservative.[2]

Numerous commentators have observed that the citric acid in today's industrially produced foods is very far from "natural":

> While it's naturally present in citrus fruits, it's not economical to use fruit-derived citric acid as a food additive. Most citric acid found in food is a commodity chemical produced by feeding simple carbohydrates to Aspergillus niger mold and then processing the resulting fermented compound. Calcium hydroxide and sulfuric acid are often used in processing. "We would all love to think that citric acid comes from an orange, but it does not," says Mary Mulry, PhD, a food scientist and founder of consulting firm FoodWise. "It comes from a chemical process." Pfizer was the leading producer of citric acid for decades. Today, leaders include Archer Daniels Midland Co. and Cargill.
>
> Lisa Marshall, *The New Hope Network*[3]

> Lemons and limes are the best sources of citric acid, followed by other citrus fruits and strawberries. Up until the early 1900s, 90 percent of the world's citric acid came from Italy, where manufacturers extracted it from fresh fruits. Then researchers discovered that fungi produced citric acid during fermentation and that this process yielded a larger amount at a lower cost. A variety of yeasts and molds make citric acid, but Aspergillus niger, a mold that belongs in the same family as penicillin, is used for large-scale production.
>
> Sandi Busch, *Livestrong.com*[4]

> Although citric acid is found in high concentrations in many citrus fruits, it is not economical to extract the acid from fruit for industrial use. Plus, the demand for citric acid far outweighs the supply of citrus fruit available.
>
> The ability of the mold Aspergillus niger to produce citric acid as a byproduct of metabolism was discovered by American food chemist James Currie in 1917. The process of cultivating Aspergillus niger and allowing it to metabolize sucrose or glucose to yield citric acid proved efficient and inexpensive. Once it was possible to produce a seemingly endless supply of citric acid, companies like Pfizer and Citrique Belge began producing it on an industrial scale. This same technique is used to produce citric acid today.

---

[1] http://www.thefreedictionary.com/fermentation
[2] The Cambridge English Dictionary defines "chemical" as "any basic substance that is used in or produced by a reaction involving changes to atoms or molecules."  https://dictionary.cambridge.org/us/dictionary/english/chemical. Thus, citric acid is unquestionably a chemical preservative, since it has effects on, and is produced by, chemical reactions involving changes to atoms or molecules.
[3] http://www.newhope.com/ingredients-general/is-citric-acid-natural
[4] https://www.livestrong.com/article/477815-how-is-citric-acid-made-where-does-it-come-from/

Bethany Moncel, *the spruce Eats*[5]

This common knowledge aside, it is simply impossible for Plaintiff to identify how Defendant sources its citric acid at this stage of the litigation.   And the Second Circuit has unequivocally rejected the evidentiary standard that Defendant implicitly asks the Court to impose: "The *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 129 S. Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly with the possession and control of defendant." *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010).

Courts have consistently deferred the issue of whether a substance is a "chemical" until trial. In *Jones v. Conagra Foods, Inc*., defendant faced a class action for labeling products with alleged chemicals such as citric acid and calcium chloride as "natural." In its motion to dismiss, the defendant presented evidence that citric acid can be either natural or non-natural. However, the possibility that some citric acid is natural was insufficient to carry a motion to dismiss because facts are considered in the light most favorable to a non-moving party on a motion to dismiss: "Without further evidence that Defendant's products included the permissible citric acid, it would be improper to dismiss Plaintiffs' claims on this matter."  *Jones v. Conagra Foods, Inc*., 912 F. Supp. 2d 889, 900-1 (N.D. Cal. 2012).

Defendant cites *Ries v. Ariz. Bevs. USA LLC* No. 12-CV-01831LHK, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. Mar. 28, 2013).  *See* Def. Mem., pg.  However, the defendant there was granted summary judgment only *after the close of discovery*. The *Ries* plaintiff's allegations that Defendant used non-natural citric acid despite labeling its products as "natural" was therefore well-

---

[5] https://www.thespruceeats.com/what-is-citric-acid-1328465

12

pleaded. Only after plaintiff's failure to collect evidence during discovery was summary judgment granted for the *Ries* defendant.

Defendant also cites to *Brazil v. Dole Packaged Foods, LLC* for the observation that "there are two ways to make ascorbic and citric acid: chemical synthesis and fermentation." Def. Mem., pg. 15 (quoting *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831, 2014 U.S. Dist. LEXIS 74234, at *5 (N.D. Cal. May 30, 2014)). But as explained above, fermentation is also a chemical process. Moreover, *Brazil* is irrelevant to the instant motion to dismiss. The *Brazil* court made this observation in granting class certification after determining that this potential variability had no bearing on the issue of ascertainability. Even if Defendant established that a factual dispute exists regarding whether its citric acid is natural or not, it would still be irrelevant here as the sole issue is whether citric acid is a preservative, not whether Defendant's citric acid is natural, non-natural, and/or chemical. Plaintiff is entitled to establish this through discovery and at trial.

### III.   PLAINTIFF PLAUSIBLY ALLEGES INJURY

Defendant argues that "[b]y seeking an "amount up to the purchase price" (Am. Compl. ¶ 41), Plaintiff asserts a 'deception as injury' theory—a theory that has been flat out rejected as insufficient to allege a claim for consumer fraud under New York law." Def. Mem., pg. 16. But this argument betrays Defendant's fundamental misunderstanding of *Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43 (1999), which simply held that deception <u>alone</u> does not constitute an injury. There, plaintiffs alleged that "defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug." *Id.* at 51. However, the only injury alleged was "that defendants' deception prevented them from making free and informed choices as consumers." *Id.* at 56. This is manifestly not Plaintiff's argument in the instant action. Her injury was <u>not</u> that

13

Defendant prevented her from making the free and informed choice of whether to purchase the Product, but that the actual value of her purchase was <u>less</u> than the value warranted by Defendant's representations.   Defendant promised Plaintiff a preservative-free mustard but delivered a preservative-laden one, which was substantially less valuable.  This is why Plaintiff was financially injured.  The injury was not to her free will, but to her pocketbook.

New York courts have rejected the "deception as injury theory" because "deceived consumers may nevertheless receive - and retain the benefits of - something of value, even if it is not precisely what they believed they were buying."  *Dash v. Seagate Tech. (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361-62 (E.D.N.Y. 2014) (quoting *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012)).  However, while deceived New York plaintiffs are not entitled to refund of a product's entire purchase price *in those cases* where they actually did receive "something of value," New York law does not dictate that deceived consumers *always* receive something of value and hence are *never* entitled to a refund of the entire purchase price.  *See Ebin v. Kangadis Food Inc*., 2013 U.S. Dist. LEXIS 174174, 2013 WL 6504547, at *12 (S.D.N.Y. Dec. 11, 2013) ("Plaintiffs contend, and the Court accepts, that for the purposes of the New York General Business Law, deception and injury have been separately pled. The deception is the false and misleading label, and the injury is the purchase price. Indeed the very case Kangadis cites recognizes that this is a permissible way to plead a New York General Business Law claim.  *Small*, 94 N.Y.2d at 56 n.5") (emphasis added).  The purchase price may not serve as compensation for the bare indignity of having been deceived.  But it can compensate for the receipt of a genuinely worthless product.  For example, a consumer who believed he was purchasing an automobile but actually received only the hollow exterior of an automobile without an engine and other

components that allow a car to actually run could rightfully request a refund of the entire purchase price.

Plaintiff's injury allegations are therefore fully consistent with the requirements of New York law.  The Amended Complaint states:

> Plaintiff and the Class were injured when Defendant denied them the full benefit of their bargains. They paid money for a Product that was represented to them as preservative-free, and then received a Product that was preservative-laden and had significantly less value for them.  Plaintiff and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Product, or would only have been willing to pay less for it, had they known the truth. They were injured in an amount up to the purchase price, the difference between the actual value of the Product and the value of the Product as misrepresented to them by Defendant, to be determined by expert testimony at trial.

Am. Compl. ¶ 41(emphases added)

Defendant may deem it unlikely that the price premium could consist in the entire purchase price, on the grounds that even a preservative-laden mustard must have some value for consumers. However, this is a question of fact reserved for trial, as stated in the Amended Complaint, and is irrelevant to the instant motion to dismiss.

There is no question that Plaintiff has adequately alleged a price premium.  The Amended Complaint cites multiple studies to the effect that consumers value preservative-free foods and are willing to pay more for them.  *See* Am. Compl. ¶¶ 37, 42 ("Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them.").  Defendant argues that there could not possibly be a price premium because its 4.0 oz. container, which does not bear a "No Preservatives," representation sells for a higher price per ounce than the 10.0 oz. container at issue in this case.  *See* Def. Mem., pg. 7-8.  But this is to be expected given that consumers are routinely granted discounts for larger purchases across all product lines.  Defendant's comparison does not control for this variable and is accordingly unpersuasive.  Defendant also charges that

"Plaintiff admits she had no direct dealing with Beaverton."  Def. Mem., pg. 2.  But this is nearly always the case in consumer fraud class actions and is accordingly irrelevant.

Defendant complains that Plaintiff has failed to "identify a comparison product" upon which she bases her price premium allegations and cites *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), for the idea that she must do so. *See* Def. Mem., pg. 17-18.  But the notion that injury cannot be alleged absent a comparison product has been rejected by many other courts, making *Izquierdo* anomalous.  *Daniel v. Mondelez Int'l, Inc.* held that "to the extent *Izquierdo* holds that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198 n.19 (E.D.N.Y. 2018).  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017), held the very same.

As *Daniel* and *Greene* both observed, a comparator product has never been a prerequisite of pleading a price premium under New York law.  *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014) (explaining that courts "have found valid [section] 349 claims despite plaintiffs not identifying competitors or prices" and that "while identifying the prices of competing products in the [c]omplaint would strengthen [the p]laintiff's allegation of injury," the allegations are not necessary to state a claim); *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (reversing a district court and holding that the plaintiff had stated claims under GBL sections 349 and 350 because "[p]laintiff has alleged that he purchased a two-year 'Carry-in' Protection Plan but did not receive the services that [d]efendant misleadingly told [p]laintiff he was purchasing"); *Stoltz v. Fage Dairy Processing Indus., S.A.*,

2015 U.S. Dist. LEXIS 126880, 2015 WL 5579872, at *22 (E.D.N.Y. Sept. 22, 2015) (finding a sufficiently-pled section 349 injury where the plaintiffs alleged that "through the deceptive practice of marketing and selling their products . . . [the defendants] have been able to command a premium price by deceiving consumers about the attributes of their yogurts and distinguishing themselves from similar products"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292-93 (S.D.N.Y. 2015) (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he was damaged in the amount of the difference in value between the product as advertised and the product as actually sold); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (finding a sufficiently-pled section 349 injury where the plaintiffs alleged that they paid price premiums based on the defendants' misrepresentations without identifying a specific comparable product).

## IV.   PLAINTIFF PLAUSIBLY ALLEGES FRAUDULENT INTENT

Defendant argues that Plaintiff fails to plausibly allege common law fraud because she fails to allege "specific facts 'that give rise to a strong inference of fraudulent intent.'" Def. Mem., pg. 21 (quoting *Dash,* 27 F. Supp. 3d at 362). However, Plaintiff's allegations do give rise to a strong inference that Defendant acted with either actual knowledge of its representations' falsity or with reckless disregard for their truth. Given the ease with which Defendant could have consulted with competent food scientists to discover that citric acid is functioning as a preservative in the Product, its failure to do so qualifies as reckless disregard for the truth, which satisfies the *scienter* requirement for fraud claims. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) ("Plaintiffs bolster this claim of alleged falsity awareness by pointing to an alleged lack of supporting scientific evidence for defendants' claims"); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be demonstrated by inference").

This is not a case about how a reasonable consumer might interpret an ambiguous label that admits of a non-deceptive construal, because whether citric acid is a preservative presents a straightforward factual question. So Defendant cannot argue that it was acting in good faith. If the citric acid was functioning was a preservative, then Defendant either knew or did not want to know this. To the extent Plaintiff has plausibly alleged the former, she has also plausibly alleged the latter.

### V.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury. Def. Mem., pgs. 4-5. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id*. *See Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co*., 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v.*

*Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution.  But there is no conflict between the two.  The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  This formulation thus presupposes that the proper party *exists*: The reference is to *the* proper party, whomever that happens to be, not to *a* proper party, who might or might not exist.  And this is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions: Given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the *Raines* formulation indicates there must be.  In these cases, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy.  This is the *best conceivable* party given the very nature of the cause of action and the public interest.  Article III does not require more than this.  The alternative is a state of affairs in which those who need and are entitled to injunctive relief are epistemologically unable to act on that right while those who have the knowledge to do so are for this very reason legally disqualified from doing so.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is meritless and should be denied.

Dated: July 19, 2018

                                                            Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2018, true and correct copies of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint were served on all counsel of record via email and U.S. Mail.

*/s/ C.K. Lee*
C.K. Lee, Esq.