UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

D/F

------------------------------------------------------------X
DANIELA QUIROZ, on behalf of herself and
others similarly situated,

                                Plaintiff,                                **MEMORANDUM & ORDER**

    -against-                                                          17-CV-7348 (NGG) (JO)

BEAVERTON FOODS, INC.,

                                Defendant.
------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Daniela Quiroz brings this putative class action against Beaverton Foods, Inc., a food manufacturer based in Oregon, challenging Defendant's advertising and marketing of its product, the 10 oz. version of Inglehoffer® Original Stone Ground Mustard (the "Product"). Plaintiff alleges that Defendant's use of labels stating that the Product contains "No Preservatives" is, among other things, misleading. (Am. Compl. ("FAC") (Dkt. 21) ¶ 1.) Plaintiff asserts multiple causes of action, including violations of New York General Business Law ("GBL") and common law fraud. (Id. ¶¶ 62-93.)

Defendant moves to dismiss the Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and arguing that the amended complaint fails to satisfy the pleading standards of Rules 8(a) and 9(b). (Mot. to Dismiss (Dkt. 23); Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. 23-1).) For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

1

I. **FACTUAL BACKGROUND**

Plaintiff challenges Defendant's labeling of the Product as containing "No Preservatives." (FAC ¶ 1.) She contends that this statement is misleading because the Product actually contains citric acid, an alleged preservative. (Id. ¶¶ 1, 12-13.) Plaintiff alleges that Defendant would have known that citric acid functions as a preservative in the Product because, upon information and belief, Defendant employs food scientists familiar with the basic properties of citric acid. (Id. ¶ 49.) Plaintiff asserts that "[b]y representing that the Product has 'No Preservatives,'" Defendant "capitalized on consumers' preference for less processed foods with fewer additives" and "the special value that reasonable consumers attach to preservative-free foods and beverages." (Id. ¶¶ 46, 48.) In this way, Defendant's misleading label gave it a "marketing advantage over competitors that do not engage in such deceptive conduct." (Id. ¶ 48.)

Plaintiff alleges that on November 8, 2017, she purchased the Product at a Target department store in Elmhurst, Queens for $2.51, and that she relied on the "No Preservatives" label in deciding to make this purchase. (Id. ¶ 9.) She contends that she would not have purchased the Product "had she known the truth about it." (Id.) Further, she states that if encounters the Product again, she "could not rely on the truthfulness of the packaging, absent corrective changes to the packaging." (Id.)

Plaintiff brings this action on behalf of a nationwide class or, in the alternative, a New York class. (Id. ¶¶ 3, 50.)

II. **PROCEDURAL HISTORY**

Plaintiff initiated this action on December 18, 2017, naming Beaverton Foods as the sole defendant. (See Compl. (Dkt. 1) ¶ 3.) On March 8, 2018, the court granted Defendant leave to move to dismiss the original complaint. (See Mar. 8, 2018 Min. Entry.) On June 7, 2018,

Plaintiff filed the amended complaint, which includes a declaration from a food scientist. (See FAC; Declaration of Marc Meyers ("Meyers Decl.") (Dkt. 21-2).) The amended complaint contains four claims. (FAC ¶¶ 62-93.) The first and second claims seek injunctive relief and damages, respectively, under GBL § 349. (Id. ¶¶ 62-78.) The third claim is for a violation of GBL § 350. (Id. ¶¶ 79-87.) The fourth claim is for common law fraud. (Id. ¶¶ 88-93.) Plaintiff asserts that this court has jurisdiction over her claims under 28 U.S.C. §1332 because she is a citizen of New York and Defendant is a corporation organized under the laws of Oregon with its headquarters in Oregon. (Id. ¶¶ 9-10.) Accordingly, this is a class action in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds five million dollars. (Id. ¶ 5 (citing 28 U.S.C § 1332(d)(2)).) In addition, Plaintiff claims that the court has jurisdiction over the action under 28 U.S.C. 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states. (Id. ¶ 6.)

Defendant's motion to dismiss was fully briefed and filed on August 16, 2018. (See Mot. to Dismiss.)

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion tests the court's subject-matter jurisdiction to hear a claim or case. See Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the court must dismiss a claim "when the . . . court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When considering a Rule 12(b)(1) motion, the court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Nevertheless, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists,'"

3

id. (quoting Makarova, 201 F.3d at 113), and courts evaluating Rule 12(b)(1) motions may consider evidence outside the pleadings. Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

### B. Rule 12(b)(6)

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under Federal Rule of Civil Procedure 8(a)(2), a "plausible" claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

### C. Rule 9(b)

Allegations of fraud, however, are subject to the heightened pleading standard of Rule 9(b), which requires that such claims "state with particularity the circumstances constituting

fraud." Fed. R. Civ. P. 9(b). Rule 9(b) thus imposes "two further burdens" on plaintiffs: one related to the "the pleading of the circumstances of the fraud," and the other related to "the pleading of the defendant's mental state." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015). First, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). Second, while the complaint may plead mental states "generally," Fed. R. Civ. P. 9(b), it must nonetheless contain facts "that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006).

## IV. DISCUSSION

### A. Motion to Dismiss Pursuant to 12(b)(1)

Defendant argues that Plaintiff lacks standing to seek injunctive relief under § 349 because she does not allege that she will buy the Product in the future and therefore does not have any risk of future or continuing harm. (Mem. at 23; Reply (Dkt. 23-11) at 10.)

To satisfy the jurisdictional requirement of Article III of the Constitution, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach, 778 F.3d 390, 394 (2d Cir. 2015) (quoting Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009)). A plaintiff seeking to represent a class must personally have standing. Lewis v. Casey, 518 U.S. 343, 357 (1996), and "a plaintiff must demonstrate standing separately" for each

form of relief sought. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

A plaintiff seeking prospective injunctive relief must prove the likelihood of future or continuing harm. Pungitore v. Barbera, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 11 (1983)). "[T]o meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (quoting Lyons, 461 U.S. at 101-102). Evidence of past wrongs does not alone "show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) (quotation marks omitted and alteration adopted)). There is no exception to demonstrating future injury when the plaintiff is pursuing a class action. Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)).

Here, Plaintiff does not allege that she will buy the Product again. (FAC ¶ 9.) Instead, she states that she "would not have purchased the Product had she known the truth about it" and asserts that if she were to "encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging." (Id.) Plaintiff does not allege that she is being targeted or subjected to ongoing misconduct by Defendant, nor does she allege any ongoing relationship with Defendant that would subject her to the possibility of future harm. Cf. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (finding that plaintiff lacked standing to seek injunctive relief where he "ha[d] not shown that he is likely to

be subjected to further sales by Amazon of [the products at issue]" because Amazon had already ceased selling the products and plaintiff did not allege that "he intends to use Amazon in the future to buy <u>any</u> products, let alone food or drug products generally or [the products at issue] in particular" (emphasis in original)); Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (finding standing to pursue injunctive relief under California's consumer protection statute where plaintiffs alleged that defendants' misleading practices were "ongoing, including conduct directed at them"). On the contrary, Plaintiff's allegations illustrate that she is "now aware of the truth" and will likely "not be harmed in the same way again." Davis v. Hain Celestial Group Inc., 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018).

Because Plaintiff has not alleged "any real or immediate threat that the plaintiff will be wronged again," Lyons, 461 U.S. at 111, the court finds that she has not established standing to seek injunctive relief and her claim for injunctive relief under the GBL must be dismissed.

### B. Motion to Dismiss Pursuant to 12(b)(6)

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6) on several grounds. First, Defendant contends that Plaintiff's claims must be dismissed because they impermissibly use state tort law to assert a private right of action for violation of a federal law that is otherwise lacking one. (See Mem. at 21-23; Reply at 7-9.) Second, Defendant argues that Plaintiff fails to plead sufficient facts to make out a violation of GBL §§ 349 and 350. (Mem. at 9-18; Reply at 2-7.) Finally, Defendant insists that Plaintiff's common law fraud claim fails because she does not sufficiently allege fraudulent intent. (Mem. at 21-23; Reply at 10.)

#### 1. Bar on Circumvention

In Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001), the Second Circuit "established that a plaintiff cannot circumvent the lack of a private right of action for violation of

7

a New York state law by pleading his claim under GBL § 349." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 199 (2d Cir. 2005) (citing Conboy, 241 F.3d at 258). In Conboy, the plaintiffs argued that the defendant engaged in a "deceptive act" within the meaning of GBL § 349 by violating GBL § 600, "which prohibits a creditor from communicating with 'the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor.'" Conboy, 241 F.3d at 257-58 (quoting GBL § 601(b)). In Broder, the Second Circuit extended Conboy's holding to the particular federal statute at issue in that case, stating that "[w]ithout deciding whether Conboy's bar on circumvention applies to all federal statutes lacking a private right of action, we hold that it does apply to 47 U.S.C. § 543(d)," which required certain cable operators to have a uniform rate structure in the geographic areas in which they provide cable service. Broder, 418 F.3d at 199.

Dismissal is thus appropriate for cases that predicate violations of state tort law on conduct that was "not inherently deceptive but became problematic by virtue" of violating a statute without a private right of action. Schlessinger v. Valspar Corp., 723 F.3d 396, 399 (2d Cir. 2013) ("Schlessinger II"); see Treiber v. Aspen Dental Mgmt., Inc., 635 F. App'x 1, 3 (2d Cir. 2016) (summary order) (dismissing a § 349 claim against a dental services company where the claim was based on the fact that company's managers were not licensed dentists as required by state statute but plaintiff did not allege "any other conduct that, in itself, might tend to deceive consumers" (citation and quotation marks omitted)); Schlessinger v. Valspar Corp., 991 N.E.2d 190, 194 (N.Y. 2013) ("Schlessinger I") (answering certified question and explaining that § 349 is limited to those practices which "may tend, in [themselves], to deceive consumers"). However, a "free-standing claim of deceptiveness . . . that happens to overlap with a possible

8

claim under [a statute without a private right of action]" does not violate the bar on circumvention. Broder, 418 F.3d at 200; accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 128 (2d Cir. 2017); M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 219 (E.D.N.Y. 2010);

Here, Defendant reasons that Plaintiff's claims are "completely reliant" on the FDA's labeling requirements and run afoul of the bar on circumvention because she "seeks to do nothing more than enforce" FDA labeling requirements, which have no private right of action. (Mem. at 19.) Defendant emphasizes that Plaintiff's definition of "chemical preservatives" is identical to that set forth in 21 C.F.R. § 101.22(a)(5), and that 21 C.F.R. § 101.22 "also contains specific requirements for how chemical preservatives must be identified on the product label." (Id. at 19-20 (citing 21 C.F.R. § 101.22(c), (j).)[1]

Plaintiff counters that she makes a "free-standing claim of deceptiveness" predicated on "the contradiction between Defendant's 'No Preservatives' representation and the truth about citric acid." (Pl. Mem. in Opp'n to Mot. to Dismiss ("Pl. Opp'n") (Dkt. 28-8) at 3.) This contradiction, she argues, "does not depend on the existence of any law lacking a private cause of action." (Id.)

---

[1] 21 C.F.R. § 101.22(a)(5) defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof . . ." 21 C.F.R. § 101.22(c) provides that "[a] statement of . . . chemical preservative shall be placed on the food or on its container or wrapper . . . as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. § 101.22(j) requires that "[a] food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'."

> The FDA promulgated 21 C.F.R. § 101.22 under authority granted by the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"), which mandates the identification of chemical preservatives. See 21 U.S.C. § 343(k). The FDCA does not provide a private right of action. 21 U.S.C. § 337(a); Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 810 (1986). The NLEA also contains an express preemption clause, preventing state and local governments from adopting food labeling requirements that are "not identical" to the requirements of the FDCA. See 21 U.S.C. 343-1(a)(3).

The court agrees with Plaintiff. Plaintiff's complaint does refer to a statutory definition to support her contention that citric acid is a preservative, but her claim is not premised on a violation of federal labeling requirements. Instead, it is based on the contention that the label "No Preservatives" is misleading because the product does in fact contain preservatives. (FAC ¶ 1-2). This conduct would constitute an "inherently deceptive" act, regardless of the existence of the FDCA and its implementing regulations. Schlessinger II, 723 F.3d at 399.

In a very similar case, the Eastern District of Pennsylvania recently held that a claim was not barred for circumvention where the plaintiff alleged that the defendant had violated § 349 by labeling certain foods as containing "No Preservatives," when in fact they contained preservatives as defined by 21 C.F.R. § 101.22(a). Hu v. Herr Foods ("Hu II"), No. 2:16-cv-05037, slip op. at 3 n.4 (E.D. Pa. Sept. 25, 2017). Although the plaintiff's complaint referred to a statutory definition as a benchmark, the court held that the claim was "not premised on a violation of 21 C.F.R. § 101.22(a)(5), which requires that food packaging ingredient panels contain the description 'preservative' for any ingredient that functions as a preservative." Id.

The cases cited by Defendant, each of which involved claims that a defendant's conduct was deceptive <u>because</u> the conduct violated federal regulations, do not compel a contrary result. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997) (suggesting that plaintiff's "dogged insistence" that the defendant sells their weight loss products "without proper FDA approval" illustrates that the plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); Solak v. Hain Celestial Group, Inc., No. 3:17-CV-0704, 2018 WL 1870474, at *9 (N.D.N.Y. Apr. 17, 2018) (explaining that to the extent that the complaint could be read as attempting to use an alleged FDCA violation as a separate basis for supporting Plaintiffs' state law consumer protection claims, those claims fail); Verzani v. Costco Wholesale Corp., No. 09-

CIV-2117 (CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) (observing that plaintiff's "persistent allegations" that the alleged mislabeling "violates the FDCA and the Food and Drug Administration's regulations on the labeling of 'shrimp cocktails' indicates that his true purpose is to privately enforce alleged violations of the FDCA"), aff'd, 432 F. App'x 29 (2d Cir. 2011) (summary order).

The court finds therefore that Plaintiff's claims do not violate the bar on circumvention.[2]

2. Plaintiff's Claims under N.Y. GBL §§ 349 and 350

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GBL § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. GBL § 350. To

---

[2] In Defendant's reply brief, Defendant argues for the first time that to the extent Plaintiff's claims do not rely on the FDA's definition of preservative, they are preempted by the FDCA's labeling requirements for foods containing chemical preservatives. (Reply at 8 (citing 21 U.S.C. § 343-1(a)(3) (establishing that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section").)

In Silva v. Smucker Nat. Foods, Inc., No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *4 (E.D.N.Y. Sept. 14, 2015), the court explained why a similar preemption argument failed. The plaintiff had brought a consumer fraud suit under § 349, claiming that the defendant had misleadingly labeled its root beer as "naturally" brewed. Id. at *1. The defendant argued that the plaintiff's claims were preempted under § 343-1(a) of the FDCA. Id. at *2. The court disagreed because:

> [a]lthough the [complaint] discusses how Smucker's labeling violates the FDCA and relevant FDA regulations . . . it does not go so far as to rest all of Smucker's state law liability on violations of federal law. The [complaint] not only challenges the ingredients list, it further alleges that Smucker's use of the words "natural" and "naturally" on the label, packaging, and website misleads consumers with respect to those ingredients. . . . As such, Silva has raised different claims from those described in 21 U.S.C. § 343(k), and are thus beyond the preemptive reach of the FDCA.

Id. at *4 (internal citations omitted).

Here, Plaintiff similarly claims that Defendant made misleading representations on the Product's label and on their webpage selling the Product. (FAC ¶¶ 1-2.) Her claims do not, however, concern whether Defendant properly disclosed citric acid as an ingredient in the Product. In other words, Plaintiff does not seek to impose new labeling requirements that differ from federal disclosure requirements. Instead, she argues that Defendant should not be given "free rein to deceptively mischaracterize those ingredients on others parts of its label in contravention of state law." See Silva, 2015 WL 5360022, at *5. Accordingly, her claims are not preempted.

state a claim under either section, a plaintiff must demonstrate that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675 (N.Y. 2012)). Claims under §§ 349 and 350 are not subject to Rule 9(b)'s heightened pleading standard. Ackerman v. Coca-Cola Co., No. 09-CV-0395 (JG), 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) (citing, inter alia, Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005)).

Defendant contends that Plaintiff's §§ 349 and 350 claims must be dismissed because she has not pleaded sufficient facts to satisfy the second or third elements. (See Mem. at 9-17.)

*a. Material Misrepresentation*

A practice is materially misleading under § 349 when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc., No. 11-CV-4509 (RJS), 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995)). Defendant argues that Plaintiff failed to allege sufficient facts to support her claims of misrepresentation for two reasons. The court takes each in turn.

First, Defendant contends that Plaintiff has failed to allege facts showing that citric acid "actually functions as a preservative" in the Product. (Mem. at 11.) The complaint defines a "chemical preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof . . ." (FAC ¶ 13 (quoting 21 C.F.R. § 101.22(a)(5)).) Based on this definition, Plaintiff argues that "it is not necessary that [citric acid] function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency." (Mem. at 6 (quoting FAC ¶ 19) (emphasis added).) Defendant

12

disagrees, arguing that "[u]nder Plaintiff's and the FDA's shared definition, an ingredient is not a 'chemical preservative' unless it actually functions as a preservative." (Mem. at 11.)[3] Plaintiff counters that because she is not attempting to enforce FDA labeling requirements, there is no reason to accept the FDA's interpretation of the phrase "tends to." (Id.) Instead, she argues, the word "tends" in the FDA definition should be understood to mean "to usually do a particular thing." (Pl. Opp'n at 6 (citing FAC ¶ 14; MacMillion Dictionary).)

In any case, Plaintiff argues, she has alleged sufficient facts showing that the citric acid in the Product functions as a preservative such that the "No Preservatives" label is a misrepresentation. (See Pl. Opp'n at 6-9.) The amended complaint includes a declaration by Dr. Marc Meyers, a food scientist. (Meyers Decl.) In his declaration, Meyers concludes that "it is clear that citric acid functions as a preservative in the [Product] and acts as a pH-reducer, antioxidant, and antimicrobial agent beyond just being used for tanginess and flavor effects." (Id. ¶ 36.) He bases this conclusion on the chemical properties of citric acid generally, its uses in similar products, and the ingredients of the Product. (Id. ¶¶ 31-32.) He explains that, by lowering the pH-levels of the other ingredients of the Product, the citric acid in the Product "function[s] as an acidulant and therefore as a preservative." (Id. ¶ 31.) He also explains that the citric acid sequesters metal ions in the Product, which "indirectly prevents oxidation of the [Product] and impedes microbial growth." (Id. ¶ 32.)

---

[3] As further support for Defendant's argument, Defendant points to the FDA's labeling regulations, which, it contends, only require a product to be labeled as containing preservatives if "the ingredient actual[ly] functions as a preservative in the product." (Mem. at 11 (emphasis added) (citing 21 C.F.R. § 101.22(j)).) The court notes that 21 C.F.R. § 101.22(j) simply sets out the specific labeling requirements for products containing a chemical preservative, which is that the label must "stat[e] both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention.'" 21 C.F.R. § 101.22(j).

13

Accepting as true all allegations of fact and drawing all reasonable inferences in favor of the plaintiff, as the court must on a motion to dismiss, see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), the court agrees that Plaintiff has sufficiently alleged that the citric acid in the Product functions as a preservative such that the label would be misleading to the reasonable consumer. See Hu II, slip op. at 3 n.4 (finding that amended complaint sufficiently alleged that citric acid functioned as a preservative in the products at issue, allegations that were supported by a declaration from Meyers in which he described the properties of citric acid and how it functioned with the other ingredients of the defendant's products).

Second, Defendant insists that Plaintiff cannot demonstrate that the Product's "No Preservatives" label is a material misrepresentation because she has not alleged that the citric acid present in the Product is a "chemical preservative" as opposed to naturally occurring. (Mem. at 16-18.) Defendant contends that this failure is fatal to Plaintiff's claim because Plaintiff's definition of preservatives, drawn from 21 C.F.R. § 101.22(a)(5), is limited to "chemical preservatives," which are artificially added to a product, rather than naturally occurring in the ingredients of the product.[4] (Id. at 15-16.)

Plaintiff acknowledges that "it may be true that only chemical preservatives need to be identified in the Product's ingredients statement" (Pl. Opp'n at 10); however, she underscores that "this action does not concern the ingredients statement" (id.). Plaintiff does not seek to

---

[4] The full text of 21 C.F.R. § 101.22(a)(5) states that: "The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." Note that this definition does not distinguish between chemicals produced in a manmade laboratory and chemicals produced through the natural processes of biological organisms.

14

enforce FDA regulations; therefore, she argues, regulatory standards that treat chemical and natural preservatives differently are irrelevant.[5]

The court agrees with Plaintiff that the difference between "chemical preservative" and "natural preservative" is immaterial to her claim because the label "No Preservatives" on the Product is misleading if it contains preservatives, regardless of whether the preservative substance in the Product is artificially added or naturally occurring. (Pl. Opp'n at 10).

Other courts considering similar claims under §§ 349 and 350 have likewise not drawn a distinction between "chemical" and "natural" preservatives in determining whether a plaintiff has alleged sufficient facts of material misrepresentation. See, e.g., Hu II, slip op. at 3 n.4 (denying motion to dismiss claims under § 349 without differentiating between "chemical" and "natural" preservatives where complaint referred to 21 C.F.R. § 101.22(a)(5) for the definition of a preservative); see also Silva, 2015 WL 5360022, at *8 (denying motion to dismiss and holding that whether the phosphoric acid in a particular product constitutes a preservative within the definition of 21 C.F.R. § 101.22(a)(5) is a "question of fact that cannot be decided as a matter of law"). The cases that Defendant cites are inapposite because they involve products claiming to be "all natural" rather than those claiming to contain "no preservatives." See, e.g., Ries v. Arizona Beverages USA, LLC, No. 10-01139 RS, 2013 WL 1287416, at *4-*5 (N.D. Cal. Mar. 28, 2013) (granting a motion for summary judgment emphasizing the difference between

---

[5] For the same reason, Defendant's argument that Plaintiff must allege that citric acid is not an "incidental additive" because "[i]ncidental additives are exempt altogether from disclosure" likewise fails. (See Mem. at 15-16 (observing under N.Y. GBL § 349(d), it is a "complete defense that [an allegedly deceptive] act or practice is . . . subject to and compl[iant] with the rules and regulations of . . . any official . . . agency of the United States").) The FDA regulation that Defendant cites, 21 C.F.R. § 101.100, states that "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food" are "exempt from compliance with the requirement[]" that a label display the "common or usual name of each ingredient." 21 C.F.R. § 101.100(a)(3). However, Plaintiff is not seeking to enforce federal labeling disclosure requirements with respect to an incidental additive; she is claiming that the label "No Preservatives" is a misrepresentation because citric acid, which is disclosed in the ingredients panel of the Product, functions as a preservative therein.

15

"chemical" and "natural" ingredients because the underlying false advertising claims involved an "All Natural" label, rather than a "No Preservatives" label); Brazil v. Dole Packaged Foods, LLC, No. 12-CV-01831-LHK, 2014 WL 2466559, at *5 (N.D. Cal. May 30, 2014) (finding, in class action challenging "all natural" labels under FDA regulations and California labeling regulations, that a class was ascertainable where defendants had shown that they used the same, natural processes to create ascorbic and citric acids in all their products), class decertified in part by, 2014 WL 5794873 (N.D. Cal., Nov. 6, 2014).

The court thus finds that Plaintiff has alleged sufficient facts to satisfy the material misrepresentation element of §§ 349 and 350.

### b. Injury

Plaintiff must also allege that she "suffered injury as a result of the [Defendant's] allegedly deceptive act or practice." Orlander, 802 F.3d at 300 (quoting Koch, 967 N.E.2d at 675). "[A] plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." Oswego, 85 N.Y.2d at 25.

Under Small v. Lorillard Tobacco Co., 720 N.E.2d 892 (1999), a plaintiff cannot plead a cognizable injury by "set[ting] forth deception as both act and injury." Id. at 898. Instead, to make out a claim under either § 349 or § 350, a plaintiff must typically "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." Orlander, 802 F.3d at 302. This may come in the form of an overpayment or "price premium," whereby a plaintiff pays more than she would have but for the deceptive practice. See, e.g., Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014).

Here, Plaintiff alleges that she paid a price premium for the Product as a result of Defendant's misrepresentations. (See FAC ¶¶ 37, 41-42.) Specifically, she alleges that the Defendant "denied [her and the putative class] the full benefit of their bargains" when "she paid money for a Product that was represented to them as preservative-free, and then received a Product that was preservative-laden and had significantly less value for them." (Id. ¶ 41). These allegations are sufficient to state a claim under the GBL. See, e.g., Orlander, 802 F.3d at 302 ("[T]here is no such rigid 'price premium' doctrine under New York law . . . . [a] plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."); Silva, 2015 WL 5360022, at *13 (finding the allegations that the plaintiff "paid a price premium for [the defendant's product] due to [the defendant's] misrepresentations" sufficient to state a claim under GBL section 349).

Contrary to Defendant's contention, Plaintiff does not need to provide a comparison product in order to support her price premium theory. See Greene v. Gerber Prod. Co., 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017). Defendant relies on Izquierdo v. Modelez Int'l, Inc., No. 16-cv-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), for the proposition that Plaintiff must point to a sufficiently similar comparison product in order to adequately allege a price premium theory of injury (Mem. at 18.) However, as the court in Greene noted, "to the extent that Izquierdo holds . . . that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, Izquierdo contradicts the weight of the law in this Circuit." Greene, 262 F. Supp. 3d at 69. In fact, "[c]ourts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." Id. (collecting cases).

17

The Court therefore denies Defendant's motion to dismiss Plaintiff's claims under §§ 349 and 350 for failure to allege material misrepresentation or injury.

### 3. Common Law Fraud

Plaintiff's fourth claim against Defendant is for common law fraud. (FAC ¶¶ 88-93). In order to successfully plead a claim of fraud, a plaintiff must allege: (1) "a material misstatement," (2) "known by the perpetrator to be false," (3) "made with an intent to deceive," (4) "upon which the plaintiff reasonably relies," and (5) damages. Rotterdam Ventures v. Ernst & Young, 300 A.D.2d 963, 964 (N.Y. App. Div. 2002). A party alleging fraud must also "state with particularity the circumstances constituting fraud or malice," Fed. R. Civ. P. 9(b), and allege facts "that give rise to a strong inference of fraudulent intent," Lerner, 459 F.3d at 290-91. A strong inference of fraudulent intent may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (quoting Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). "The simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" Davis, 297 F. Supp. 3d at 337 (quoting In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RRM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).

Caselaw provides examples of allegations that are sufficient to support an inference of fraudulent intent in consumer fraud actions concerning misleading labels. In Greene, court held that the plaintiff had adequately pleaded facts to support an inference of "conscious misbehavior or recklessness" by alleging that the defendant was familiar with an empirical study that directly contradicted the statement made on their product's label and that the FDA had informed the defendant that its label was misleading. 262 F. Supp. 3d at 73-74. In Hughes v. Ester C Co., 930

F. Supp. 2d 439, 473 (E.D.N.Y. 2013), the court held that a plaintiff had sufficiently alleged fraudulent intent by alleging the defendant's awareness of falsity—through knowledge of "an alleged lack of supporting scientific evidence for defendants' claims," a scientific study disputing several of the defendant's principal representations, and FTC settlements in cases involving similar allegations of fraudulent misrepresentations—and that the defendant profited from its misleading advertising tactics. Id. In contrast, a plaintiff cannot support an inference of fraudulent intent by alleging, without support, that "a large company such as the defendant would have learned" as part of its ordinary course of business that its labels were misleading. Rodriguez v. Hanesbrands Inc., 17-CV-1612 (DLI) (RLM), 2018 WL 2078116, at *8 (E.D.N.Y. Feb. 20, 2018), adopted by, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018).

Here, Plaintiff supports her claim of fraudulent intent by alleging: (1) that Defendant had a motive to misrepresent whether the Product contained preservatives in order to gain a "marketing advantage over competitors that do not engage in such deceptive conduct" (FAC ¶ 48), and (2) that Defendant knew that its "No Preservatives" label was false because "[u]pon information and belief, Defendant employs food scientists who are familiar with the basic properties of citric acid" and "[t]hus, Defendant knew that citric acid was a preservative" (id. ¶¶ 45-49).

These allegations amount to simple knowledge that the Product's label is false and a generalized motive to increase sales of the Product. These allegations are not sufficient to support an inference of fraudulent intent. Davis, 297 F. Supp. 3d at 337. Because the Plaintiff has not made sufficient allegations of *scienter* in her complaint, her claim of common law fraud must be dismissed. Id.

19

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claim for injunctive relief under N.Y. GBL § 349 (Count I) and her claim for common law fraud (Count IV) are dismissed. Plaintiff's claims for damages under N.Y. GBL §§ 349 and 350 (Counts II and III) may proceed to discovery.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge